## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ANDREW JACKSON,        )
                                                )
                 **Petitioner,**        )
                                                )
      **vs.**                             )  **Case number 4:08cv0593 ERW/TCM**
                                                )
JEFF NORMAN,[1]           )
                                                )
              **Respondent.**        )

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Andrew Jackson (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a March 22, 2002 conviction after a jury trial.[2]  See 28 U.S.C. § 2254.  Respondents filed a Response to the Order to Show Cause Why a Writ of Habeas Corpus Should Not Issue (Response), and Petitioner filed a reply.[3]

---

[1] The record reveals that Petitioner is incarcerated at the Southeast Correctional Center, where Jeff Norman is now the Warden.  See http://doc.mo.gov./division/dai/warden.php (last visited on June 22, 2011).  Therefore, the Court will substitute Jeff Norman for the originally named Defendant, Troy Steele, who was the Warden of the Southeast Correctional Center at the time Petitioner filed this proceeding.

[2] Attached to his habeas petition, Petitioner provided copies of four  photographs of shoe prints or impressions, identified by Petitioner as "A-1," "A-2," "A-3," and "A-4."  (See Pet. Attachs. [Doc. 1-2].)  Respondent has not presented an objection to these materials.  To the extent these photographs are part of the state court record, are not part of Respondent's exhibits filed in this habeas proceeding, and are relevant to this Court's discussion, the Court will refer to them as identified by Petitioner.

[3] Petitioner attached to his reply an appendix containing various exhibits.  (See Reply Attachs. [Doc. 13-2].)  Respondent has not presented an objection to these materials, which appear to be: pages 168-69 of the trial transcript (numbered A1-A2); a copy of a statement to the police made

This matter is before the undersigned United States Magistrate for a review and a recommended disposition. See 28 U.S.C. § 636(b). Finding the federal habeas petition presents eight grounds for relief and concluding that the second ground is procedurally barred while all the other grounds are without merit, the undersigned recommends denying the petition without further proceedings.

## **Background**

Petitioner was charged, as a prior and persistent offender, with two felonies (Counts 1 and 2) and a misdemeanor (Count 3). (Information, filed Mar. 27, 2003, Legal File, Resp. Ex. D, at 7-10 [all of Respondent's Exhibits are filed as part of Doc. 9].) Specifically, Petitioner was charged with burglary in the first degree, in violation of Mo. Rev. Stat. § 569.160,[4] for knowingly and unlawfully entering the St. Charles, Missouri, home of Brian

---

by the first victim's wife on January 2, 2003 (numbered A3); a copy of the first victim's wife's statement "on cross-examination, to St. Charles City Police P.O. J. Tipton, 12/31/02" (numbered A4-15); "Photographs of the Ford Explorer at the crime scene" (numbered A20-23); "Officer Fisk's statement and photographs of 'shoe prints,' and the Explorer in the dark at night at the 'crash site'" (numbered A24-28); the second victim's "statements made to the St. Charles City Police, 12/31/02" (numbered A29); "Marcy Robinson's trial transcript statements" (numbered A30-36); "Tr. - pg. 12-14" (numbered A37-39); "Missouri Highway Patrol Record System Generic Background Check, CJ25033-R01" (numbered A40); and "St. Charles City Police Supplement Statement from Marcy Robinson, 12/31/02" (numbered A41). To the extent these materials are part of the record below, are not part of Respondent's exhibits filed in this habeas proceeding, and are relevant to this Court's discussion, the Court will refer to them as identified by Petitioner.

[4] The version of this statute in effect in December 2002 provided in relevant part that

[a] person commits the crime of burglary in the first degree if he knowingly enters unlawfully . . . in a building or [an] inhabitable structure for the purpose of committing a crime therein, and . . . while in the building or inhabitable structure . . . . [t]here is present in the structure another person who is not a participant in the crime.

Lepping (First Victim) on December 31, 2002, to steal (Count 1); stealing, in violation of Mo. Rev. Stat. § 570.030,[5] by taking on December 31, 2002, without First Victim's consent, First Victim's property valued at more than $500 but less than $25,000, specifically, a 2001 Ford Explorer (Vehicle), a laptop computer, and a 35 millimeter camera, (Count 2); and stealing, in violation of Mo. Rev. Stat. § 570.030,[6] in St. Charles, Missouri, by taking from Shanna Alford (Second Victim) on December 31, 2002, without her consent, a cell phone, gloves, and United States coins. (Id.)

Prior to trial, Petitioner filed a motion to suppress statements, admissions, or confessions and a motion to bifurcate trial, among other motions. (Trial Court Docket Sheet, Legal File, Resp't Ex. D, at 2; Pet'r Mot. Bifurcate Trial, Legal File, Resp't Ex. D, at 11-14; Pet'r Mots. Suppress, Legal File, Resp't Ex. D, at 15-22.) By his motion to bifurcate, Petitioner sought to sever for trial the misdemeanor stealing count from the two felony counts.

_____

Mo. Rev. Stat. § 569.160.1(3).

[5] The version of this Missouri statute in effect in December 2002 provided in relevant part that

> [a] person commits the [felony] crime of stealing if he . . . appropriates property . . . of another with the purpose to deprive him . . . thereof, either without his consent or by means of deceit or coercion . . . [when t]he value of the property . . . appropriated is five hundred dollars or more but less than twenty five thousand dollars.

Mo. Rev. Stat. §§ 570.030.1 and 570.030.3(1).

[6] The version of this Missouri statute in effect in December 2002 provided in relevant part that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Mo. Rev. Stat. § 570.030.1.

(Pet'r Mot. Bifurcate trial, Legal File, Resp't Ex. D, at 11-14.)  After hearing argument, the trial court denied the motion to bifurcate.  (Tr. of Hr'g Mot. Bifurcate Trial, Resp't Ex. C, at 1-16; Trial Court Docket Sheet, Legal File, Resp't Ex. D, at 2; Trial Tr., Resp't Ex. A,  at 10.) No hearing was requested or held on Petitioner's motions to suppress.

At the trial in September 2003, the State presented the following witnesses: First Victim (Trial Tr., Resp't Ex. A, at 165-89); Sandra Lepping (First Victim's Wife or Wife) (id. at 189-207); Marcy Robinson, Petitioner's girlfriend at the time of the incident (id. at 208-26); Joan Godbey, who saw a man outside a neighbor's house at around 7:30 a.m. on December 31, 2002 (id. at 314-26); Patricia Bischel, Godbey's neighbor (id. at 326-34); and Second Victim, who lived in a house located behind Bischel's and Godbey's homes and identified items, including a cell phone, that police had obtained which were taken from her car as it was parked in the driveway of her home during the early morning hours of December 31, 2002 (id. at 443-60).  In relevant part, First Victim and his Wife each testified that they had not given permission to anyone to enter their home or take their Vehicle on December 31, 2002.  (Id. at 174-75, 196-97.)  Additionally, Second Victim testified, in relevant part, that she had not given anyone permission to get into her car during the early morning hours of December 31, 2002, and that she had not made calls on her cell phone at around 7:30 a.m. that day.  (Id. at 451-53.)

The State also introduced at trial numerous exhibits and presented the testimony of the following law enforcement personnel:

-- Dean Meyer, a City of St. Charles police officer who approached Robinson's parked car, which was near First Victim's home at about 2:30 a.m. on December 31, 2002, and arrested Robinson, and who chased and investigated the Vehicle that ended up abandoned in a field at about 4:30 a.m. that same day (id. at 226-60);

-- Dave Frenzia, a City of St. Charles police officer, who responded to and photographed the scene where the Vehicle was found and attempted unsuccessfully to obtain fingerprints from First Victim's home (id. at 261-75);

-- Richard Tiemann, a police officer and crime scene technician with the City of St. Charles Police Department, who took photographs of and processed the Vehicle, including unsuccessfully attempting to obtain fingerprints from the Vehicle (id. at 290-313);

-- Patrick Milatovic, a City of St. Charles police officer, who interviewed Second Victim, Bischel, and Godbey at their homes and viewed the area where the supect was seen walking near Bischel's and Godbey's homes (id. at 334-54);

-- Chad Fisk, a detective with the City of St. Charles Police Department who processed areas near Second Victim's, Bischel's, and Godbey's homes, including taking photographs in those areas and of shoes Petitioner was wearing at the time of his arrest (id. at 354-88 and 408-43); and

-- Ray Juengst, a detective with the City of St. Charles Police Department, (id. at 461-506, 517-76), who arrested Petitioner on December 31, 2002, as Petitioner was talking on a cell phone while walking in an area of the field opposite to the area where the Vehicle was

found (<u>id.</u> at 464, 466-68)   After Detective Juengst gave Petitioner his <u>Miranda</u>[7] warnings and Petitioner signed a waiver form, Petitioner spoke with Detective Juengst.  (<u>Id.</u> at 469-88.)

During trial, the prosecutor asked Detective Juengst twice whether Petitioner "ever g[a]ve [him] an account of where [Petitioner] was at the time the[] crimes were committed that was corroborated by other evidence." (<u>Id.</u> at 501-04.) The trial court sustained objections to those questions and instructed the jury to disregard the question the first time it was asked. (<u>Id.</u> at 502-04.)  The prosecutor then pursued questioning on other topics and rested after this witness.  (<u>Id.</u> at 504-06, 576, 582-83.)

When the State rested at the end of the second day of trial, the trial court questioned Petitioner about his right to testify, gave Petitioner and his counsel the evening to discuss it more if necessary, and then questioned Petitioner further the next morning, learning that he had enough time to discuss with his trial attorney the giving up of his right to testify and that he was making the decision not to testify freely and voluntarily.  (<u>Id.</u> at 589-91, 601-02, 610-12.)  Petitioner then recalled Wife to testify, and unsuccessfully sought to present other evidence, including the testimony of his sister, Coretta Jackson, to establish an alibi, before resting.  (<u>Id.</u> at 601-10, 612-29, 639-40.)

The trial court denied Petitioner's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence and, in relevant part, gave the jury a separate verdict-directing instruction for each of the three charged offenses as well as an

---

[7] **Miranda v. Arizona**, 384 U.S. 436 (1966).

instruction that Petitioner was "charged with a separate offense in each of the 3 counts submitted to you. Each count must be considered separately." (Id. at 583-88, 631-40; Instrs. No. 5-8, Legal File, Resp't Ex. D, at 30.) The jury found Petitioner guilty of each of the charged offenses. (Trial Tr., Resp't Ex. A, at 693-95.)

The trial court later denied Petitioner's motion for new trial and sentenced Petitioner, as a prior and persistent offender,[8] to concurrent terms of twenty-five years for the first degree burglary, fifteen years for the felony stealing, and one year for the misdemeanor stealing. (Sentencing Hr'g, Resp't Ex. B; Sentence, Judgment, and Commitment, Legal File, Resp't Ex. D, at 54-55.)

Petitioner presented three points on his direct appeal. (Pet'r Br., Resp't Ex. E.) First, Petitioner argued the trial court erred and violated his rights to a fair trial and to due process of law under the Fifth, Sixth, and Fourteenth Amendments, by denying his motion for judgment of acquittal on Counts I and II because the State failed to prove Petitioner was the person who entered First Victim's home and stole the Vehicle and other items. (Id. at 10, 14.) Second, Petitioner urged the trial court abused its discretion and violated his privilege against self-incrimination as well as his rights to a fair trial and due process of law under the Fifth, Sixth, and Fourteenth Amendments, by denying Petitioner's motion for mistrial due to the prosecutor's repeated questions of Detective Juengst that suggested Petitioner needed to explain his whereabouts at the time of the crimes. (Id. at 11, 19.) Finally, Petitioner

---

[8] The trial court found Petitioner was a prior and persistent offender, outside the presence of the jury, at the end of the first day of trial. (Trial Tr., Vol. I, Resp't Ex. A, at 276-79.)

contended the trial court abused its discretion and violated his rights to a fair trial and to due process of law under the Fifth, Sixth, and Fourteenth Amendments, by denying Petitioner's motion to sever the felony burglary and stealing counts from the misdemeanor stealing count in that the two felony counts occurred at different times and in different locations, involved different victims, and were committed "by a different modus operandi." (Id. at 12-13, 23.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed Petitioner's conviction in a summary per curiam order, dated May 18, 2004, supported by a memorandum explaining the decision that was sent only to the parties. (Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H.)

As to Petitioner's first point, that there was insufficient evidence to support the guilty verdicts on Counts I and II because there was insufficient evidence that he was the person who entered First Victim's home and stole the Vehicle, the Missouri Court of Appeals stated:

> The same standard of review applies for both direct evidence and circumstantial evidence cases. State v. Hutchison, 957 S.W.2d 757, 767 (Mo. banc 1997); State v. Brooks, 158 S.W.3d 841, 847 (Mo. [Ct.] App. . . . 2005). If a jury is convinced beyond a reasonable doubt, we need not alter the result simply because the case depended upon circumstantial evidence so long as the evidence meets the minimal appellate standard required by due process. Brooks, 158 S.W.3d at 848. On review, we accept as true all evidence favorable to the State, including all inferences favorable to the verdict drawn from the evidence, and disregard all evidence and inferences to the contrary. State v. Clay, 975 S.W.2d 121, 139 (Mo. banc 1998); Brooks, 158 S.W.3d at 847. Review is limited to determining whether sufficient evidence was presented from which a reasonable juror might find the defendant guilty beyond a reasonable doubt. Clay, 975 S.W.2d at 139; Brooks, 158 S.W.3d at 847. The Court neither weighs the evidence nor evaluates witnesses' credibility. State v. Pierce, 932 S.W.2d 425, 427 (Mo. [Ct.] App. . . . 1996).

[Petitioner] argues there was insufficient evidence to establish the identity of the perpetrator of the burglary and felony stealing at [First Victim's] residence. [Petitioner] claims there was no witness identification, no physical evidence, and no property belonging to the victims found in [Petitioner]'s possession.[9] [Petitioner] also notes several differences between the burglary and felony stealing charges and the misdemeanor stealing charge, which he acknowledges he committed in his brief. In response, the State argues that the "overwhelming nature" of the circumstantial evidence was sufficient for a reasonable juror to find [Petitioner] guilty of the burglary and felony stealing charges. We have thoroughly reviewed the trial transcript and documentary trial exhibits. We disagree with [Petitioner]'s claim that the evidence against him as the person who committed the burglary and felony stealing crimes was insufficient to support his conviction. In his brief, [Petitioner] contends that testimony established the presence of "another large black man" near the scene of the burglary and felony theft, but no evidence of this other individual's race was adduced at trial.

Marcy Robinson testified that she, [Petitioner], and two friends, Byron and Evette, came to St. Charles in the early morning on December 31, 2002 to pick up another friend of [Petitioner]. She testified that they could not find the right house, so [Petitioner] left the car to look for the house on foot. Ms. Robinson stated that she parked the car, and at that time a police officer made contact with her, Byron, and Evette. Ms. Robinson testified that she was arrested on an unrelated warrant and gave Byron permission to drive her car home. Ms. Robinson also testified that she could not remember what Byron was wearing at this time, but he was not wearing brightly-colored clothing.

Officer Meyer testified he received a dispatch at 2:23 a.m. on December 31, 2002 concerning an "occupied suspicious [car]" in the area of Landau Court and Elm. He testified he drove down Landau Court and saw a [car] occupied by three persons, identified as Marcy Robinson, Byron Turner, and Evette. Officer Meyer testified that Marcy Robinson "said that they were out to pick up a friend by the name of Drew," and he testified that Byron Turner "was a small man, thin build," a direct contradiction of the assertion in [Petitioner]'s

---

[9] The state appellate court noted here that "the personal property stolen from [First Victim's] residence was found in the stolen [Vehicle] after it ran off the road and was abandoned in a field after police pursuit." (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 3 n.2.)

brief that testimony established the presence of "another large black man" in the area of the burglary.

Officer Meyer also testified that he received a dispatch on December 31, 2002 at about 4:30 or 4:45 a.m. of a white [Vehicle] stolen from [First Victim's residence on] Landau Court. He testified that as he responded to the dispatch, he encountered a white [Vehicle] approaching from the west on Elm Point Road "maybe two minutes, three minutes" after receiving the dispatch. He described the driver of the [Vehicle] as a "black male, shaved head, and a dark colored material on the upper part of his body." Officer Meyer testified that [Petitioner]'s appearance "is consistent" with the person he saw driving the [Vehicle]. Officer Meyer testified that he turned and pursued the [Vehicle], which accelerated to try to evade him. He testified that the driver lost control of the [V]ehicle and went into a field on the east side of Elm Street. Officer Meyer stated that when he reached the [V]ehicle, it was unoccupied.

[First Victim] testified that he and his [W]ife . . . arrived home . . . at "4, 4:20 or 4:30, something like that" on December 31, 2002. [First Victim] testified he and his [W]ife had been home between five and 15 minutes when the [Vehicle] was stolen. He testified keys to the [Vehicle], a laptop computer, a travel bag containing gloves and other items, a 35-millimeter camera, a cell phone and charger, a day planner, and a purse were taken from inside the house.

[Wife] testified that she and her husband arrived home at about 4:15 or 4:30 a.m. She stated she immediately went upstairs to bed. She testified, "And then my husband came upstairs, and by the time he laid his head on the pillow, literally, the buzzer went off on [the Vehicle], the panic switch." [Wife] went on to testify:

> . . . from where I was sitting, the individual who was taking [the Vehicle], his head was over the door. My daughter is only like five three, she is smaller than me, and it was somebody big. And, this is silly but [he] had what I thought were orange swishy pants on. That's what I said. That's what we call jogging pants, swishy pants.

> . . . I really don't know if they were really dark red or orange. I said a bright color. They were very bright.

[Wife] further testified:

> I saw the light in [the Vehicle] on, I saw the person outside of [the Vehicle] still, and the person's head was over the [Vehicle] door. And I could see it – there was a lot of movement going on, because I'm sure [the person was] by then a little nervous to get out of there, but I could see a dark top real clear, I could very clearly see the dark, I don't know if it was navy blue or black, but it was a dark top and very bright pants, very – which kind of as I was running up the street, it was striking me as funny.

[Wife] also identified the orange pants [Petitioner] was wearing at the time of his arrest, and introduced into evidence as State's Exhibit 5, as consistent with the pants worn by the person who took [the V]ehicle. Under redirect examination, [Wife] testified that when she ran outside as [the V]ehicle was being stolen, she got "a general look" at the person in the [V]ehicle and "he was very large." Finally, [Wife] testified that the police never described to her the person taken into custody and never told her that person's race or the type of clothing he wore at the time of arrest.

[Petitioner] contends in his brief that [Wife's] "in-court description was not consistent with the written statement she gave to the police on January 2, 2003." This alleged inconsistency, however, related to the suspect's estimated height, not to his overall appearance or his clothing. [Wife] testified that in her January 2, 2003 statement to the police, she stated that she could not determine the height of the person who stole [the V]ehicle because he was bending over, while at trial she testified that she saw the person's head above the door of [the V]ehicle so she knew the person "was somebody big." This is the sole inconsistency in description with which [Wife] was confronted at trial.

. . . Godbey, of . . . Elm Point Road, testified that she saw a person coming off her next-door neighbor's porch around 7:30 or 8:00 a.m. on December 31, 2002. Ms. Godbey described the person as a black male who "looked like he had red pants on, and a dark colored – I don't know if was like a jersey top or something, it was something dark colored, and he had either a hood or a cap, a hat on, a sock hat like." Mrs. Godbey further described the person's pants: ". . . [I]t looked more like sweat-type pants, they were loose fitted, not jean material. I would say more of a nylon, rayon, but they weren't blue-jean material."

. . . Bischel, of . . . Elm Point Road, testified that her next-door neighbor called her "early, 7, 7:30, something in there" on the morning of December 31, 2002 and "asked me if I knew that there was a person behind my house, hiding behind my house." Ms. Bischel testified that she telephoned the police and saw the person walk out of her driveway, across her neighbor's driveway, down the street to the corner, and left into the weeds toward the railroad tracks. She described the person as follows:

> A. (Ms. Bischel)    He had reddish sort of pants that were like sweats, and a dark jacket, and he had his hand up by his ear like as if he was talking on the cell phone the whole time I could see him.

> Q (Prosecutor)    Now, you have also said "he." Did you see if [the person] was male or female?

> A.    Well, not really, but he was a big person. He seemed like a big person and he looked male.

> Q    Could you tell anything else about him, like what race, white, black, Hispanic?

> A.    He was a black person, and he was just big, like a big man, but, you know, he had all these clothes, coat, you know, on.

Officer Patrick Milatovic testified that he responded to the dispatch concerning a suspicious black male in the driveway of a home on Elm Point Road. He stated that he was familiar with the area where the stolen [V]ehicle was abandoned earlier and that it was relatively close to the location where the call on the suspicious black male originated. Officer Milatovic testified he spoke with Ms. Bischel and Ms. Godbey and then went over the route Ms. Bischel reported the suspicious person had taken. He testified that a railroad track on the other side of Elm Point Road runs parallel and contiguous to Elm Point Road and that a "big open field" lies on the other side of the railroad tracks. Officer Milatovic testified that Detective Juengst then called him and asked him to take a theft report at a residence on Grandview because a person just taken into custody had items in his possession that police determined belonged to [Second Victim] on Grandview. Officer Milatovic testified that

[Second Victim's] residence on Grandview is "directly behind" the Bischel and Godbey houses on Elm Point Road.

[Second Victim], [who lived on] Grandview, testified that her cell phone, her husband's cell phone battery, a pair of gloves with a Winnie the Pooh emblem, and "a couple dollars" in change were missing from her Chevy Blazer. She identified the billing statement for her cell phone that had been stolen from her Chevy Blazer while it was parked at her residence on the morning of December 31, 2002. [Second Victim] identified three cell-phone calls on the billing statement that were made to the same number at 7:30 a.m. on December 31. She denied having made any of the three cell-phone calls. This evidence establishes that [Petitioner] was in possession of [Second Victim]'s stolen cell phone by 7:30 a.m. on December 31, 2002, two hours and 45 minutes after [First Victim] observed someone stealing [the Vehicle]. It was also two hours and 45 minutes after Officer Meyer encountered the stolen [Vehicle] and pursued it until it ran off the road into a field near [Second Victim]'s house, and the driver abandoned the stolen [V]ehicle and fled. [Wife] testified that the person she saw steal [the V]ehicle matched [Petitioner]'s general description. Her description of the person's clothing was consistent with the clothing [Petitioner] was wearing when he was arrested. Officer Meyer's description of the driver of the stolen [V]ehicle also matched [Petitioner]'s general physical description and that of the clothing [Petitioner] wore at the time of his arrest.

Detective Ray Juengst testified that, when he began his investigation, the description he received from Officer Meyer, who saw the suspect driving the stolen [V]ehicle, was that of "a heavy set, black male with a shaved head wearing a dark shirt or coat." Detective Juengst testified that he decided to "reinterview" [First Victim and Wife] and was en route to their home when he received a call concerning a "suspicious black male . . . [on] the same exact street where the [V]ehicle had been located after pursuit." Detective Juengst stated that he and another detective responded to the call. He testified, "When we responded to the area we found a black male subject walking along the edge of the field that fit the description that Officer Meyer had described of a subject driving past him in the stolen [V]ehicle." Detective Juengst stated he found [Petitioner] at the opposite end of the open field where the [Vehicle] had crashed. Review of State's trial Exhibit 1, an aerial map of the area where the crimes occurred, reveals that police arrested [Petitioner] about 1,200 feet east of where the stolen [Vehicle] was abandoned and about 1,000 feet north of where [Second Victim's] property was stolen from her [car]. The map

identifies [Second Victim]'s residence at about 1,400 feet southeast of where the [Vehicle] was abandoned. Detective Juengst testified that [Petitioner] was "similar in description to what Officer Meyer had described." Detective Juengst elaborated: "His [Petitioner's] build, he was heavy set. He had a shaved head. He had on a dark leather coat, orange jogging pants, white shoes. Based on th[e] description that . . . had [been] given [to] us and what we were seeing at the time, we arrested him."

Detective Juengst testified that during his interview with [Petitioner] at the police station, [Petitioner] initially denied, but then eventually admitted, he used the nickname "Drew." Detective Juengst also testified that [Petitioner] eventually admitted that he knew Marcy Robinson, Byron Turner, and Yvette Holmes,[10] the three persons Officer Meyer encountered earlier the same morning in the Landau Court area "within a rock's throw of the [First V]ictim's house." Detective Juengst testified that during the interview, he told [Petitioner] he believed [Petitioner] "was involved in the incident with the [V]ehicle, the stolen Explorer." Detective Juengst further testified, "He [Petitioner] made the statement repeatedly I can't confess to this crime. I had asked him why he couldn't confess to it. He would simply say he couldn't confess to it." Detective Juengst also testified to the following exchange during his interview with [Petitioner].

As I had made the statement that I didn't know if he was in the house to rape or murder, he immediately responded with I didn't go into that house to hurt anybody, and then kind of stepped back and, oops.

At that point I asked him why did he go in there. Again he just started repeating the statement, I can't confess to this crime. every question I would ask from that point on, I can't confess to this crime, I can't confess to this crime.

Detective Juengst testified that [Petitioner] never said that he did not commit the crime.

_____

[10]  The Missouri Court of Appeals noted that "[t]he transcript spells this individual's [first] name both as Evette and Yvette." (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 9 n.4.)

The State presented testimony placing [Petitioner] "within a rock's throw of the [First V]ictim's house" about two hours before the burglary and felony theft. [Wife]'s description of the person she saw steal [the V]ehicle and the person's clothing was consistent with [Petitioner]'s physical appearance and the black jacket and reddish or orange jogging pants he was wearing at the time of his arrest. Officer Meyer, who encountered and pursued the fleeing [Vehicle] minutes after it was stolen from [First Victim's] residence also gave a description of the driver and his clothing consistent with [Petitioner]'s appearance and clothing. Testimony from Ms. Godbey and Ms. Bischel placed a person fitting [Petitioner]'s description and wearing a black top and reddish sweat pants in a neighborhood adjacent to the field where the [Vehicle] was abandoned less than three hours earlier. Soon after Ms. Godbey and Ms. Bischel spoke with Officer Milatovic, [Petitioner] was arrested on the opposite end of the field where the [Vehicle] was abandoned and was found in possession of other stolen items. The evidence established that [Petitioner] came into possession of the other stolen items, namely [Second Victim]'s cell phone, within three hours after the burglary and felony theft. The State's Exhibit 1 demonstrated for the jury the location of each crime, the point where police began pursuit of the [Vehicle], the location where the [Vehicle] was abandoned, the location of the Godbey and Bischel residences, and the location where police arrested [Petitioner], all in relation to one another. Detective Juengst testified that, following [Petitioner]'s arrest and waiver of his <u>Miranda</u> rights, [Petitioner] made incriminating statements to detectives, including that he "didn't go into that house to hurt anybody." Certainly, an inference of guilt may be drawn from [Petitioner]'s failure to ever deny the crimes to police after voluntarily waiving his right to silence. <u>See</u>, <u>e.g.</u>, <u>Hutchison</u>, 957 S.W.2d at 763 (A defendant who voluntarily speaks after receiving <u>Miranda</u> warnings may be impeached not only with his statements but also with his "selective silence[]"). The State presented sufficient evidence from which a reasonable juror could find [Petitioner] guilty of the burglary and felony stealing charges beyond a reasonable doubt. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 2-11

(fifty-third alteration in original) (one footnote omitted).)

As to Petitioner's second point, that the trial court erred in denying his motion for

mistrial regarding the prosecutor's alleged comments on Petitioner's failure to testify or failure

to tell the police where he was at the time of the crimes and alleged shifting of the burden to Petitioner, the Missouri Court of Appeals stated:

> Mistrial is a drastic remedy used only in the most extraordinary circumstances where there exists a grievous error that cannot otherwise be remedied. State v. Brooks, 960 S.W.2d 479, 491 (Mo. banc 1997); State v. Vincent, 59 S.W.3d 34, 36 (Mo. [Ct.] App. . . . 2001); State v. Jones, 7 S.W.3d 413, 419 (Mo. [Ct.] App. . . . 1999). Because the trial court observes any impact the alleged error has on the jury, we limit review of the trial court's refusal to grant a mistrial to abuse of discretion. Brooks, 960 S.W.2d at 491; Vincent, 59 S.W.3d at 36.

> We first note that [Petitioner]'s point on appeal characterizes the prosecutor's alleged statements as comments on [Petitioner]'s failure to testify, resulting in a shift of the burden of proof. [Petitioner]'s objection at trial and motion for new trial on this issue, however, characterize the prosecutor's alleged comments as suggesting to the jury that [Petitioner] had an affirmative duty to explain his whereabouts at the time of the crimes to the interrogating police officer. Error is not preserved unless it is both objected to at trial and included in a motion for new trial. State v. Jones, 128 S.W.3d 110, 113 (Mo. [Ct.] App. . . . 2003). We find [Petitioner] has failed to preserve this issue for appeal. Rule 29.11(d). Thus, our review is only for plain error. Rule 30.20; State v. B[re]thold, 149 S.W.3d 906, 909 (Mo. [Ct.] App. . . . 2004).

> In any event, we disagree with both characterizations of the prosecutor's questions to Detective Juengst. The evidence revealed that, once in custody and having received a Miranda warning, [Petitioner] waived his right to remain silent and voluntarily spoke to the interrogating police detective. It was proper for the State to adduce evidence from the detective as to what [Petitioner] did and did not say. Once a defendant waives his right to remain silent, all of his speech, or non-silence, may be admitted into evidence and remarked on. State v. White, 941 S.W.2d 575, 580 (Mo. [Ct.] App. . . . 1997). We find no error, plain or otherwise. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 11-12.)

- 16 -

With respect to Petitioner's third point, that the trial court erred in failing to sever for trial the misdemeanor stealing count from the felony burglary and stealing counts, the Missouri Court of Appeals stated:

> The burglary and felony stealing charges arose from theft of several consumer electronics, keys, and other items from within [First Victim's] residence and [the taking of First Victim's Vehicle]. The misdemeanor stealing charge arose from theft of a cell phone and other items from a Chevy Blazer owned by [Second Victim] and parked outside her home. [Petitioner] alleges he was substantially prejudiced by the trial court's failure to sever the charges because the jury was likely to consider evidence of guilt in the misdemeanor stealing count as evidence of guilt in the burglary and felony stealing counts. [Petitioner] concedes in his brief that he stole items from [Second Victim's car].
>
> [Petitioner]'s allegation of error requires a two-part analysis. State v. Hyman, 37 S.W.3d 384, 393 (Mo. [Ct.] App. . . . 2001). First, we must determine whether joinder of the misdemeanor and felony counts was proper as a matter of law. Id. Then, if joinder was proper, we must determine whether the trial court abused its discretion in not severing the offenses and instead trying them together in a single prosecution. Id.; see also State v. Spencer, 50 S.W.3d [869,] 879 [(Mo. Ct. App. 2001)]. Joinder addresses whether multiple crimes can be charged in a single proceeding whereas severance assumes that joinder is proper and gives the trial court discretion to determine whether substantial prejudice would result if the charges were tried together. State v. Warren, 141 S.W.3d 478, 486 (Mo. [Ct.] App. . . .2004) (per curiam); Hyman, 37 S.W.3d at 393.
>
> Multiple offenses may be joined in the same indictment or information if the offenses are of the "same or similar character," are based on the "same act or transaction," or on acts that are "connected together" or constitute part of a "common scheme or plan." Section 545.140.2; Rule 23.05; State v. Tobias, 873 S.W.2d 650, 653 (Mo. [Ct.] App. . . . 1994). Joinder is proper if any one of the statutory criteria is met. Warren, 141 S.W.3d at 487. "For proper joinder, the manner in which the crimes were committed must show that the same person is likely to have committed all crimes charged." Hyman, 37 S.W.3d at 393.

At issue in this case is whether the offenses were of the "same or similar character." Similar tactics or facts are sufficient to constitute acts of the "same or similar character." Warren, 141 S.W.3d at 487; Tobias, 873 S.W.2d at 653. Tactics need not be identical; tactics that resemble one another or correspond in nature are sufficient. Warren, 141 S.W.3d at 487; State v. Vinson, 834 S.W.2d 824, 827 (Mo. [Ct.] App. . . . 1992). Factors showing similar tactics include, but are not limited to, commission of the same type of offenses, victims of the same sex and age group, offenses occurring at the same location, and offenses closely related in time. Warren, 141 S.W.3d at 487; Hyman, 37 S.W.3d at 393.

Here, the State proved that the charged counts are similar in character. The incidents occurred in the same neighborhood, and the misdemeanor stealing count occurred next to the field where the [V]ehicle and personal property involved in the felony stealing count were abandoned. All incidents occurred within a period of approximately three hours. The burglary was committed for the purpose of stealing [First Victim's] keys, personal property, and [V]ehicle. Both the misdemeanor and felony stealing counts involved entering a vehicle and theft of personal property – including a cell phone, cell-phone accessories, and gloves – in each instance. Such similarities make it likely that the same person committed all of the offenses charged. We find that the offenses were of the "same or similar character" and that joinder was proper.

Having found that joinder was proper, the next question is whether the trial court erred in not severing the offenses. When a party makes a particularized showing of substantial prejudice in a written motion, the decision to sever is left to the sound discretion of the trial court. Section 545.885.2; State v. Morrow, 968 S.W.2d 100, 109 (Mo. banc 1998); Spencer, 50 S.W.3d at 879. We will reverse a denial of severance only upon a showing of both an abuse of discretion and a particularized showing of substantial prejudice. State v. Strauss, 893 S.W.2d 890, 892 (Mo. [Ct.] App. . . . 1995). "Substantial prejudice" means "a bias or discrimination against the defendant or state which is actually existing or real and not one which is merely imaginary, illusionary or nominal." Section 545.885.2; Hyman, 37 S.W.3d at 394. In determining whether a defendant has made a particularized showing of substantial prejudice, and whether it was an abuse of the trial court's discretion to deny severance, we consider several factors, including: (1) the number of offenses charged, (2) the complexity of the evidence, and (3) whether the fact-finder can realistically distinguish the evidence and apply the law intelligently to each

offense. <u>Spencer</u>, 50 S.W.3d at 879; <u>Hyman</u>, 37 S.W.3d at 394. Absent a particularized showing of factual information demonstrating exactly how the defendant was substantially prejudiced, the trial court has not abused its discretion in denying the motion. <u>Warren</u>, 141 S.W.3d at 487; <u>State v. Bechhold</u>, 65 S.W.3d 591, 596 (Mo. [Ct.] App. . . . 2002).

This case involves stealing from victims at two separate residences and burglarizing one of the residences, all in the early morning of December 31, 2002. [Petitioner] was charged with three offenses; first-degree burglary and felony stealing in connection with the acts at [First Victim's] residence and misdemeanor stealing in connection with the acts outside the [Second Victim's] residence. [Petitioner] claims time, location, the victims, and modus operandi distinguish the misdemeanor stealing from the burglary and felony stealing. For example, [Petitioner] admits he made calls with [Second Victim's] cell phone whereas the person who stole [First Victim's] cell phone did not use it. [Petitioner] also argues the crimes were committed "miles apart" and not at the same time. We find [Petitioner]'s argument unpersuasive. <u>See</u>, <u>e.g.</u>, <u>State v. Smith</u>, 886 S.W.2d 194, 197 (Mo. [Ct.] App. . . . 1994) (finding robberies of four different victims within four-month period in City of St. Louis were of such similarity to warrant denial of severance). [Petitioner] does not claim that the charges were too numerous nor do we find that they are.

Nor were the charges overly complex so that the jury would confuse the evidence. <u>See</u>, <u>e.g.</u>, <u>Warren</u>, 141 S.W.3d at [48]9 (holding no abuse of discretion in refusing to sever where evidence relating to each offense is uncomplicated and distinct and jury is properly instructed to return separate verdicts for each offense charged). Nor was the evidence or the facts of each incident complex. The evidence, presented over just three days, consisted primarily of testimony by the victims, police officers, a witness who placed [Petitioner] in the immediate area of the burglary and felony stealing incidents, and witnesses who placed a person, described in physical appearance and dress consistent with [Petitioner], in the immediate area of the misdemeanor theft and [First Victim's] stolen and abandoned [V]ehicle. The evidence of the events and chronology was not too complex for the jury to understand and consider whether [Petitioner] committed all of the crimes charged.

[Petitioner] claims prejudice because the jury could have used evidence of guilt for the misdemeanor stealing count as evidence of guilt for the burglary and felony stealing counts. A general allegation that the jury would likely consider evidence of guilt on one charge as evidence of guilt on another does

not meet the requirement of a particularized showing of substantial prejudice. [Id.] at 488-89[ (]quoting Bechhold, 65 S.W.3d at 596-97[)]. Moreover, each offense was clearly set out in a separate instruction, and the jury was specifically instructed that each count must be considered separately. See Instructions 5-8; MAI-CR 304.12; Spencer, 50 S.W.3d at 879; State v. Perkins, 826 S.W.2d 385, 390 (Mo. [Ct.] App. . . . 1992). Finally, there is nothing in the record that indicates the jury's inability to distinguish between the evidence for each offense or the [jury's] inability to apply the law to each offense.

[Petitioner] has failed to make a clear, particularized showing of substantial prejudice and we find no abuse of discretion. The trial court did not err in denying [Petitioner]'s motion to sever. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 12-17.)

The state appellate court issued its mandate on November 2, 2005. (Direct Appeal Mandate, dated Nov. 2, 2005, Resp't Ex. I.) Petitioner did not file a motion for transfer to the Missouri Supreme Court. (See, e.g., Docket Sheet for **State v. Jackson**, No. ED83789, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited June 23, 2011).)

On January 25, 2006, Petitioner filed a pro se motion for post-conviction relief under Mo. S. Ct. Rule 29.15. (Pet'r Post-conviction Mot., Legal File, Resp't Ex. K, at 4-25.) Thereafter, through counsel, Petitioner filed an amended motion for post-conviction relief under Rule 29.15 and a request for an evidentiary hearing. (Pet'r Am. Post-conviction Mot., Legal File, Resp't Ex. K, at 26-113.) For the seven grounds for relief presented in his amended post-conviction motion, Petitioner argued: (1) his direct appeal attorney's concession in the brief on direct appeal that Petitioner had committed the misdemeanor stealing offense denied his right to the effective assistance of counsel, to due process, and to access to the courts in violation of the Fifth, Sixth, and Fourteenth Amendments because,

without that concession, the state appellate court would have found insufficient evidence of the felonies and he was prejudiced in that there was only circumstantial evidence linking Petitioner to the crimes, Petitioner never admitted he committed the charged offenses, and Petitioner did not consent to his appellate attorney's admission (id. at 30-31); (2) his rights to due process, to the effective assistance of counsel, to effective cross-examination, and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's (a) failure to investigate whether three local prosecuting attorney's offices had promised the State's key witness, Robinson, a lenient disposition of pending charges in exchange for her trial testimony against Petitioner and (b) failure to impeach Robinson on the basis of such promise of leniency (id. at 31-32); (3) his trial attorney's failure to request a pre-trial hearing on Petitioner's motion to suppress statements violated his rights to due process, a fair and impartial jury, a fair trial, and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments and there is a reasonable probability the trial court would have suppressed Petitioner's statements (id. at 32-33); (4) his trial attorney's failure to call Petitioner to testify at a suppression hearing and at trial violated his rights to testify, to present a complete defense, to due process, to a fair trial, and to the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments, and the outcome of the proceedings would have been different if he had testified (id. at 33-34); (5) his trial attorney's failure to investigate, subpoena, and call Coretta Jackson, an alibi witness, violated his rights to due process, to effective assistance of counsel, and to a fair trial under the Fifth, Sixth, and

Fourteenth Amendments, and prejudiced Petitioner in that Coretta Jackson would have testified that Petitioner was staying at her house in St. Louis and could not have committed the charged offenses (id. at 34); (6) his trial attorney's failure to invoke the rule excluding witnesses from the courtroom violated his rights to due process, to effective assistance of counsel, to present a defense, and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments (id. at 34-35); and (7) his trial attorney's failure to request a copy of the 911 tapes or the State's failure to provide his trial attorney with a copy of such tapes violated his rights to due process, to the effective assistance of counsel, to present a defense, and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments and prejudiced Petitioner in that he sought discovery and should have received any such tape "to verify the witnesses' description of the burglar wearing orange swishy pants" (id. at 35). Petitioner also included in the amended motion the twenty-one claims he had presented in the pro se post-conviction motion.[11]

_____

[11] The pro se post-conviction motion was attached to and incorporated into the amended post-conviction motion. (See Am. Post-conviction Motion, Resp't Ex. K at 28, 35, 92-113.) The copy of the pro se motion that is attached to the amended motion is missing the sixth page. That sixth page is, however, available of record as part of the original pro se motion that is at pages 4-25 of Respondent's Exhibit K.

In his pro se post-conviction motion, Petitioner contended he was provided ineffective assistance of counsel in that: (a) his trial attorney failed to consult with him before the preliminary hearing and trial; (b) his trial attorney failed to investigate and adequately prepare for the hearing on Petitioner's motion to bifurcate; (c) his trial attorney failed to provide a timely motion to suppress the testimony of Detective Juengst regarding "incriminating statements allegedly made by" Petitioner; (d) his trial attorney failed to exclude witnesses from the courtroom during trial; (e) his trial attorney failed to "object to the state's presentation of the case out of context and out of sequence"; (f) his trial attorney failed to investigate and timely endorse witnesses providing an alibi defense; (g) his trial attorney advised Petitioner not to testify in his own defense; (h) his trial attorney failed adequately

The motion court[12] denied Petitioner's pro se and amended post-conviction motions on October 6, 2006 (Judgment and Order, Resp't Ex. K at 114-20), after reading Petitioner's deposition(Pet'r Dep., Resp't Ex. L; Post-conviction Hr'g Tr., Resp't Ex. J, at 155, 161) and conducting an evidentiary hearing at which Petitioner; Petitioner's trial and appellate attorneys; and Petitioner's sisters, Coretta Jackson and Kimberly Jackson, testified (Post-conviction Hr'g Tr., Resp't Ex. J). Two letters exchanged between Petitioner and one of his appellate attorneys, as well as Petitioner's brief on direct appeal were introduced at the evidentiary hearing. (Id. at 10, 11, 146-48.)

In his post-conviction appeal, filed on November 14, 2006, Petitioner raised five points. (Pet'r Br., Resp't Ex. M.) For his first point, Petitioner argued his direct appeal

---

to cross-examine Robinson about her arrest and the related warrants; (i) his trial attorney failed to investigate any agreement or promise of leniency to Robinson in exchange for her testimony against Petitioner; (j) his trial attorney failed to object and preserve for appellate review Officer Milatovic's testimony regarding a pair of gloves he found; (k) his trial attorney failed effectively to cross-examine Officer Frenzia about his processing of First Victim's home and the condition of the field where the Vehicle was found; (l) his trial attorney failed to present expert testimony on shoe print analysis and failed effectively to cross-examine Detective Fisk who took pictures of shoe impressions; (m) his trial attorney failed effectively to cross-examine Second Victim; (n) his trial attorney failed effectively to cross-examine Officer Meyer and to object to the prosecutor's improper questioning of Officer Meyer about when he passed the Vehicle; (o) his trial attorney failed effectively to cross-examine First Victim's Wife; (p) his trial attorney failed to call Officer Frenzia as a witness to rebut Detective Juengst's testimony; (q) his trial attorney failed to call Detective Fisk as a witness to rebut Officer Frenzia's testimony; (r) his trial attorney failed to request a jury instruction on circumstantial evidence; (s) his trial attorney failed to object to the State's jury instruction no. 6; (t) his attorney on direct appeal, without first consulting Petitioner, admitted that Petitioner was guilty of the misdemeanor stealing charge; and (u) his trial attorney failed to object and move for a mistrial when Second Victim started her testimony about the telephone call she received from Detective Juengst. (Pet'r Mtn for Post-Conviction Relief, Legal File, Resp't Ex. K, at 6-20 and 25).

[12]  The judge presiding over the post-conviction proceedings was the same judge who had presided over the trial proceedings.

attorney's concession in the appellate brief that Petitioner had committed the misdemeanor stealing offense when Petitioner had not consented to that admission and had never admitted his role in any of the crimes, violated Petitioner's rights to due process, the effective assistance of counsel, and access to the courts under the Fifth, Sixth, and Fourteenth Amendments because, without that concession, the state appellate court would have found insufficient evidence of the felony burglary and stealing charges. (Id. at 32, 39.) For his second point, Petitioner urged his trial attorney's failure to investigate whether any of three local prosecuting attorney's offices had promised Robinson leniency in the disposition of her charges in exchange for her testimony at Petitioner's trial and his trial attorney's failure to cross-examine Robinson about such a promise violated his rights to due process, to effective cross-examination, to a fair trial, and to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments. (Id. at 34, 46.) In his third point on post-conviction appeal, Petitioner contended that his trial attorney's failure to call Petitioner to testify at a hearing on his motion to suppress violated his rights to due process, to present a defense, to a fair trial, and to the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments. (Id. at 36, 54.) For the fourth point, Petitioner argued that his trial attorney's failure to prepare him to testify at trial and failure to call him to testify violated his rights to testify, to present a complete defense, to due process, to a fair trial, and to the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments. (Id. at 37, 60.) For his fifth point on post-conviction appeal, Petitioner urged that his trial attorney's failure to

investigate Coretta Jackson and to call her as an alibi witness violated his rights to due process, to present a defense, to a fair trial, and to the effective assistance of counsel under the Fifth, Sixth, and fourteenth Amendments.  (Id. at 38, 68.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed the motion court's decision in a summary per curiam order accompanied by a memorandum explaining the appellate court's order that was sent to the parties only.  (Order, dated Dec. 11, 2007, Resp't Ex. P.)

As to Petitioner's first point, that his attorney on direct appeal provided ineffective assistance by conceding Petitioner had committed the misdemeanor stealing offense, the Missouri Court of Appeals first noted that a post-conviction motion is restricted for use only by "those convicted of felonies, not those convicted of misdemeanors" but addressed the merits of this point because Petitioner was arguing his appellate attorney's conduct "'may have contributed somewhat to' the resolution of the appeal of [Petitioner]'s felony convictions."  (Id. at 5 (quoting Smith v. State, 60 S.W.3d 31, 35 (Mo. Ct. App. 2001).) Considering this point on its merits, the state appellate court concluded:

> In denying [Petitioner]'s claim that his appellate counsel was ineffective in conceding the misdemeanor stealing offense, the motion court found counsel more credible than [Petitioner], and denied this claim on the grounds appellate counsel had made a reasonable strategy decision to limit the direct appeal to a smaller number of claims which had the best chance of prevailing.  In addition, the motion court found that [Petitioner] was not prejudiced because the appellate court in the direct appeal discussed all of the evidence in deciding there was sufficient evidence to establish the felony counts.

*    *    *

To prevail on a claim that appellate counsel provided ineffective assistance, a [post-conviction] movant must establish that appellate counsel failed to raise an obvious claim of error that a competent and effective attorney would have asserted, and that the claimed error was serious enough "to create a reasonable probability that, if it was raised," the direct appeal's outcome would have been different. Tisius v. State, 183 S.W.3d 207, 215 (Mo. banc [2006]) . . . . Here, however, [Petitioner] is not contesting any omission by his counsel on direct appeal. Rather, he is claiming his direct appeal counsel was ineffective for including statements in [Petitioner]'s brief on direct appeal that were considered by the appellate court to be concessions of guilt on the misdemeanor count which led to the conclusion that there was sufficient evidence to support the felony convictions. The relevant statements from the argument supporting [Petitioner]'s point one on direct appeal, appear in bold below:

> The State failed to carry its burden to prove beyond a reasonable doubt that [Petitioner] was the person who enter[ed] the . . . home [of the victims of the felonies] and stole their property. No witness identified [Petitioner] in court or in any post-arrest proceedings. Not one fingerprint, footprint, shoe print, DNA, hair sample[,] or any other piece of forensic evidence linked . . . [Petitioner] to [those victims'] home, [V]ehicle[,] or property. Petitioner was not found in possession of a single item associated with the burglary or felony theft. [Petitioner] never confessed to the crime.

> \* \* \*

> Numerous "equally valid inferences" can be drawn which point to [Petitioner]'s innocence. The officers testified that the [victims'] [Vehicle] was abandoned in a field so muddy that the lead detective refused to approach the [V]ehicle: "I wasn't stepping in that field. I would have sunk. . . . I'm saying if someone was stepping in the field they would definitely have mud on them." . . . However, [Petitioner's] shoes had only a small amount of dirt. The condition of the shoes matched the ground conditions near the Chevy Blazer where the shoe prints were photographed. Similarly, the detective described [Petitioner's] pants simply as "wet" at the time they were seized – but not muddy. Nor did any evidence prove that [Petitioner]

showed any signs of having recently been in a motor vehicle accident.

[Petitioner's] behavior was totally inconsistent with that of the burglar. The burglar fled from the police and even went off the roadway, down a ravine and into a field. However, [Petitioner] calmly and cooperatively approached the officers without any attempt to flee.

After the crash the burglar immediately fled on foot, thereby eluding the officers who were canvassing the area. At the time of his arrest [Petitioner] was just walking along the edge of the field still in the same area as the wrecked [Vehicle] – even though hours had passed since the crash.

The burglar took valuable items from [those victims'] home[,] which were all left in the [Vehicle]. **[Petitioner], according to the jury's verdict on [the misdemeanor count], took a pair of Winnie the Pooh gloves, and some change, and discarded nothing. At the time of his arrest[], [Petitioner] was carrying $40 . . . in quarters, dimes, nickels[,] and pennies.**

**[Petitioner] stole and kept pennies and nickels.** The burglar had just stolen and abandoned a laptop computer and a 35mm camera.

**[Petitioner] was stealing change out of unlocked cars and walking down a muddy field wearing Winnie the Pooh gloves.** The burglar secretly entered an occupied dwelling while at least [one of the victims] was awake, and within minutes gathered valuable items from throughout the house, placed them into the victim[s'][Vehicle] and stole it for his escape.

The burglar stole and abandoned a cellular telephone without ever using it. **[Petitioner] repeatedly used [the misdemeanor stealing victim's] phone and was still talking on the phone when he approached the detectives.**

The uncorroborated testimony of Marcy Robinson suggests [Petitioner] was near the scene of the burglary approximately 2 hours before it occurred. However, her testimony also established that another large black man, . . . whose clothing was not known, was actually present with her when she was arrested by the police. The police officer's testimony did corroborate the presence of this other black suspect near the scene of the burglary.

The 25 year prison sentence cannot rest on one victim's brief glimpse in the dark of night at a pair of fungible sweat pants. Nor can it rest on the unilateral decision of the police detective to shut down the investigation upon the apprehension of the first black man in the general area to match the vague description of the suspect. Due process demands more.

[Petitioner's] motion for judgment of acquittal on [the two felony counts] should have been granted. This Court should reverse the judgment as to [those counts].

. . .

To the extent an appellate attorney may be found ineffective for what is omitted from a brief on direct appeal, we consider the test to be the same when the ineffective appellate counsel claim is based on what is included in the appellate brief. Thus, we will consider whether the allegedly improper matter included in [Petitioner]'s appellate brief was serious enough "to create a reasonable probability that, if it was" omitted from his brief, the direct appeal's outcome would have been different. See id. We are not persuaded that the deletion of the challenged statements from the appellate brief filed on [Petitioner]'s behalf in his direct appeal would have changed the outcome of the direct appeal or necessitated a finding by the appellate court that there was insufficient evidence to support the felony convictions. In the direct appeal, this Court provided at least six pages detailing the testimony and exhibits that supported the guilty verdicts on the felony counts. This comprehensive discussion of the record supporting the felony convictions more than supports the appellate court's determination that there was sufficient evidence supporting those convictions, regardless of any brief reference by the Court to a "concession" regarding the misdemeanor conviction, regardless of any statements made in [Petitioner]'s brief on direct appeal, and regardless of

whether or not [Petitioner] agreed with any statements made by his counsel in his brief on direct appeal.  Therefore, [Petitioner] was not prejudiced by any "concession" in his brief on direct appeal.

To the extent [Petitioner] asks us to revisit the motion court's determination that counsel was more credible than [Petitioner], and conclude, based on [Petitioner]'s testimony at the evidentiary hearing, that his appellate counsel was ineffective, we are unable to do so.  "We defer to the motion court's superior ability to judge the credibility of witnesses." Jackson v. State, 205 S.W.3d 282, 287 (Mo. [Ct.] App. . . . 2006).  "We will not disturb the [motion] court's choice" of one witness' testimony over another's.  Holman v. State, 88 S.W.3d 105, 112 (Mo. [Ct.] App. . . . 2002).

The motion court did not err in denying [Petitioner] relief on this claim.

Point one is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at pp. 5-8

(tenth, eleventh, thirteenth, fifteenth, seventeenth, twenty-first, thirtieth, thirty-first, thirty-fourth, thirty-fifth, thirty-seventh, fortieth, forty-first, forty-seventh, and forty-eighth alterations in original) (footnote omitted).)

With respect to Petitioner's second point on post-conviction appeal, that Petitioner's trial attorney provided ineffective assistance by failing to investigate and then cross-examine Robinson about any promise of leniency Robinson received in exchange for her testimony at Petitioner's trial, the Missouri Court of Appeals stated:

At trial, [Petitioner]'s counsel cross-examined Robinson, who was a witness for the State.  At the evidentiary hearing on [Petitioner]'s motion for post-conviction relief, the only evidence of the possibility that Robinson received lenient treatment was [Petitioner]'s testimony that nothing now appeared on Robinson's criminal record although she was arrested on warrants at the time of [Petitioner]'s arrest.  The motion court denied this claim finding, in relevant part, that it lacked merit due to [Petitioner]'s failure "to prove there

was a promise of leniency made to Robinson." The motion court noted [Petitioner]'s claim of leniency was "mere speculation" because he "did not have any information that she in fact received a 'deal' or promise of leniency in exchange for her testimony."

A movant may claim a trial attorney provided ineffective assistance due to the attorney's allegedly insufficient investigation and exposure of the bias of a witness for the prosecution due to the allegedly favorable resolution of charges pending against that witness. Glasgow v. State, 218 S.W.3d 484, 490 (Mo. [Ct.] App. . . . 2007). To establish such a claim, however, the movant must show "the specific information the attorney failed to discover, that reasonable investigation would have disclosed that information, and that [the] information would have been beneficial" to the movant. Id. When the movant "does not present evidence that the State offered a lenient sentence to the [witness] in exchange for favorable testimony," the witness's "testimony would not have been subject to additional substantial impeachment" and an ineffective assistance of counsel claim may be denied. Id. at 491.

Here, there was no evidence of a State's offer of a lenient sentence in exchange for Robinson's testimony at [Petitioner]'s trial. Therefore, the record does not establish that Robinson's testimony would have been subject to additional substantial impeachment beneficial to [Petitioner] due to leniency or favorable treatment on Robinson's warrants. Absent such a showing, [Petitioner] is not entitled to relief on this claim.

The motion court did not clearly err in denying [Petitioner] relief on this claim.

Point two is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at pp. 9-10

(seventh and eighth alterations in original).)

In denying Petitioner's third point, that his trial attorney was ineffective in failing to

request a hearing on the motion to suppress statements and failing to call Petitioner as a

witness at such a hearing, the Missouri Court of Appeals stated:

Prior to trial, [Petitioner]'s trial attorney filed a motion to suppress identification testimony, a motion to suppress physical evidence, and a motion to suppress statements, admissions, or confessions. The trial court did not have a suppression hearing. At the evidentiary hearing on [Petitioner]'s motion for post-conviction relief, [Petitioner]'s trial attorney explained he did not request a suppression hearing because he did not think there were any admissions of guilt in any statement made by [Petitioner] and [Petitioner] had executed a waiver of rights form.

In denying this ineffective assistance of trial counsel claim, the motion court concluded the claim lacked merit because [Petitioner] "failed to show prejudice as a result of not having a hearing on" the motions to suppress statements and evidence. The motion court, which was the trial court, also noted that "[c]onsidering all of the [pertinent evidence the court had noted, it] would not have suppressed [Petitioner]'s statement to [the] Detective . . . , and there was no basis to suppress the physical evidence, [Petitioner]'s shoe, as [Petitioner] was wearing it at the time he was arrested."

Notably, [Petitioner] has not directed us to any authority for the proposition that an attorney may be ineffective for failing to obtain a hearing on a motion to suppress. An attorney's decision to vigorously pursue motions to suppress are strategy matters within defense counsel's discretion. State v. Sanders, 539 S.W.2d 458, 461 (Mo. [Ct.] App. . . . 1976). Therefore, the failure to obtain a hearing on motions to suppress is not a proper basis for post-conviction relief.

We also may not grant post-conviction relief due to an attorney's failure to call a movant to testify at a suppression hearing. Pinkard v. State, 694 S.W2d 761, 762 (Mo. [Ct.] App. . . . 1985). This is because "the selection of witnesses and evidence to be produced at a hearing is a matter of litigation strategy and professional judgment." Id.

The motion court did not err in denying [Petitioner] relief on this claim.

Point three is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at pp. 10-11 (seventh, eighth, and tenth alterations in original).)

In denying Petitioner's fourth claim on post-conviction appeal, that his trial attorney was ineffective in failing to prepare Petitioner to testify and failing to call Petitioner to testify at trial, the Missouri Court of Appeals stated:

> At the close of the State's case, the trial court inquired about [Petitioner]'s desire to testify and recessed the proceedings until the next day to provide [Petitioner] with a greater opportunity to consult with his trial attorney about testifying. At the start of proceedings the next day [Petitioner] informed the trial court that he had freely and voluntarily decided not to testify after having had enough time to consult with his attorney about testifying.

> At the evidentiary hearing, [Petitioner]'s trial counsel testified he and [Petitioner] discussed [Petitioner]'s desire to testify at trial, and counsel advised [Petitioner] it would not be a good idea to testify due to his criminal history and the need of the State to make its case based on circumstantial evidence only.

> In denying this claim, the motion court found that "[Petitioner] knowingly and voluntarily advised the [trial c]ourt he was not going to testify at trial," that counsel's testimony was more credible than [Petitioner]'s, and that counsel's legal advice to [Petitioner] was reasonable. Furthermore, the motion court found the outcome of trial would not have been different even if [Petitioner] had testified.

> While the decision whether or not to testify rests with the defendant alone, the defendant is entitled to reasonably competent advice from counsel. Rousan v. State, 48 S.W.3d 576, 585 (Mo. banc 2001). If the attorney's advice not to testify is considered sound trial strategy, such advice is not enough alone to be deemed ineffective assistance of counsel. Id. The motion court may believe an attorney's testimony and disbelieve a movant's testimony. Id. As we noted in the discussion of point one, we defer to the motion court's superior ability to judge the witnesses' credibility and do not disturb the motion court's choice of one witness' testimony over another's. Jackson, 205 S.W.3d at 287; Holman, 88 S.W.3d at 112. The motion court was free to believe the attorney's motion hearing testimony and [Petitioner]'s trial testimony, and to disbelieve [Petitioner]'s motion hearing testimony, on this issue. Jackson, 205 S.W.3d at 287.

Therefore, we rely on the more credible testimony of counsel to resolve this point. We are persuaded that the motion court correctly found trial counsel's advice to [Petitioner] reasonable because [Petitioner] had several prior convictions for offenses similar to those charged here and the evidence against [Petitioner] was circumstantial. Importantly, [Petitioner] had the opportunity, during an overnight break in the trial proceedings, to consult with his trial attorney and consider whether or not to testify during trial, and clearly advised the trial court it was his decision not to testify. Under the circumstances, [Petitioner]'s trial attorney's advice may be considered sound trial strategy and not ineffective assistance of counsel.

The motion court did not err in denying [Petitioner] relief on this claim.

Point four is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at pp. 11-13 (ninth alteration in original).)

For the fifth point in Petitioner's post-conviction appeal, that his trial attorney was ineffective in failing to investigate and call his sister, Coretta Jackson, as an alibi witness at trial, the Missouri Court of Appeals stated:

On the morning of the third day of trial, after the State had rested its case in chief, [Petitioner]'s counsel advised the trial court that he wanted to present a witness, [Petitioner]'s sister, Coretta Jackson, to testify "as to where [Petitioner] was at a certain time" relevant to the charged offenses. The State objected that [Petitioner] had not provided any information about this sister; [Petitioner] had not indicated the existence of an alibi witness, despite the State's pre-trial request for disclosure of alibi; and this witness had been sitting in court throughout the trial. The trial court denied "the request to adduce this purported alibi testimony at the eleventh hour."

During the evidentiary hearing on the motion for post-conviction relief, [Petitioner]'s testimony contradicted his trial attorney's testimony regarding when [Petitioner] mentioned Coretta Jackson and her alibi testimony to counsel. The motion court found counsel more credible than [Petitioner] and that [Petitioner] "failed to provide [his trial attorney] with sufficient

information to prepare an alibi defense." In denying this claim, the motion court found the claim meritless because "[Petitioner] did not provide [his trial attorney] with adequate information about Coretta Jackson and her testimony until it was time for the defense's case at trial." The motion court also noted that, "due to all the evidence that had been presented to the jury," the outcome of trial would not have been different if Coretta Jackson had testified.

A trial attorney may provide ineffective assistance of counsel if the attorney fails to investigate and present alibi witnesses on behalf of counsel's client, and alibi witnesses, if known and available, must, at least, be interviewed. See Perkins-Bey v. State, 735 S.W.2d 170, 171-72 (Mo. [Ct.] App. . . . 1987). Importantly, however, defense counsel "relies on his client to identify witnesses and is not required to be clairvoyant." State v. Twenter, 818 S.W.2d 628, 639 (Mo. banc 1991); Rotellini v. State, 77 S.W.3d 632, 635 (Mo. [Ct.] App. . . . 2002) (quoting Twenter, 818 S.W.2d at 639). Therefore, "[i]f a defense attorney has no notice that a witness exists, he cannot be held ineffective for failing to call that witness to testify." Lane v. State, 778 S.W.2d 769, 771 (Mo. [Ct.] App. . . . 1989).

Here, the motion court concluded trial counsel's testimony that [Petitioner] did not disclose the alibi information provided by this sister until it was time for the defense to present its evidence at trial was more credible than [Petitioner]'s testimony on this issue. As we have previously noted, we must defer to this credibility determination. Counsel cannot be faulted for alibi information known to and not disclosed by his client. Additionally, [Petitioner]'s trial attorney attempted unsuccessfully to present the testimony at trial once it was disclosed to him. It is not clear what more counsel could have done. [Petitioner]'s trial attorney was not ineffective in addressing the alibi evidence that might have been available through Coretta Jackson.

The motion court did not err in denying this claim for relief.

Point five is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at pp. 13-15 (tenth, twelfth, and fifteenth alterations in original).)

The appellate court issued its mandate in the post-conviction appeal on January 3, 2008, after the denial of transfer to the Missouri Supreme Court. (Page 3 of the Post-conviction Appellate Court Docket Sheet, Resp't Ex. N.)

Petitioner then timely filed this habeas proceeding. Petitioner presents eight grounds for relief. First, Petitioner argues the trial court violated his rights to due process and a fair trial under the Fifth and Fourteenth Amendments by denying his motion for judgment of acquittal on the felony charges in Counts I and II because the State failed to prove that he was the individual who entered First Victim's home and stole the Vehicle and other property. (Pet. at 6-2 [Doc. 1].) Second, Petitioner contends the trial court violated his rights to due process and a fair trial, as well as his privilege against self-incrimination by denying his motion for mistrial due to the prosecutor's repeated questions which commented on Petitioner's failure to testify and shifted the burden of proof to Petitioner by suggesting that Petitioner needed to explain where he was at the time of the offenses. (Id. at 6-4.) For his third ground, Petitioner urges the trial court violated his rights to due process and a fair trial under the Fifth and Fourteenth Amendments by denying his motion to sever the felony charges from the misdemeanor charge, because those offenses occurred at different times and different locations, involved different victims, and were allegedly committed through different "modus operandi." (Id. at 6-6.) In his fourth ground for relief, Petitioner argues his counsel on direct appeal provided ineffective assistance of counsel and violated his rights to due process, to access to the courts, and to meaningful appellate review, by conceding in the

appellate brief that Petitioner had committed the misdemeanor stealing offense when Petitioner had not consented to that concession. (<u>Id.</u> at 6-8.) For his fifth ground, Petitioner contends his trial attorney's failure to investigate whether three jurisdictions promised Robinson a lenient disposition of her charges in exchange for her testimony against Petitioner and his failure to impeach Robinson about such a promise violated Petitioner's rights to the effective assistance of counsel, due process, effective cross-examination, a fair trial, and meaningful appellate review. (<u>Id.</u> at 6-10.) In his sixth ground, Petitioner urges this trial attorney was ineffective in failing to request a hearing on the motion to suppress and failing to call Petitioner at such a hearing so that Petitioner could testify that he never made any statements, that he was not given his <u>Miranda</u> warnings until three hours into the interrogation, and that there was no recording of his alleged statement in writing or otherwise. (<u>Id.</u> at 6-12.) For his seventh ground for relief, Petitioner argues that his trial attorney provided ineffective assistance and violated his rights to due process and a fair trial, by failing to prepare and call Petitioner to testify at trial. (<u>Id.</u> at 6-14.) Finally, for his eighth ground, Petitioner argues that his trial attorney provided ineffective assistance and violated his rights to due process, to present a defense and to a fair trial, by failing to investigate and call his sister, Coretta Jackson, who could testify that Petitioner came to her house at about 1:00 a.m. on December 31, 2002, and left around 6:00 a.m. that day. (<u>Id.</u> at 6-16.) Respondent counters that each of these grounds for relief lack merit. Petitioner also requests the appointment of counsel and an evidentiary hearing. (<u>Id.</u> at 15.)

Evidentiary Hearing.  Petitioner asks for a hearing.[13]  (See id. at 15 and Pet'r Reply at 3-5 [Doc. 13 at 3-5].)  Respondent has not expressly addressed this request.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) contains "mandatory restrictions barring evidentiary hearings in most federal habeas proceedings" under § 2254.  **Williams v. Norris**, 576 F.3d 850, 860 (8th Cir. 2009), cert. denied, 131 S.Ct. 558 (2010); 28 U.S.C. § 2254(e)(2). Only when a "habeas petitioner 'was unable to develop his claim in state court despite diligent effort' is an evidentiary hearing not barred by § 2254(e)(2)." **Id.** at 860 (quoting Williams v. Taylor, 529 U.S. 420, 437 (2000)).  Here, the record shows Petitioner had the opportunity to develop his claims, especially through the evidentiary hearing held on his post-conviction motion.[14]  The record of that proceeding reveals "no state court ruling or other state-created impediment that prevented [Petitioner] from developing the factual basis" of any of his claims.  **Id.** at 862.  Petitioner has not argued or shown he was unable to develop any of his habeas claims in state court "despite [his]

---

[13]  This Court will not discuss the Ninth Circuit authority Petitioner cites in support of his request for an evidentiary hearing, **Earp v. Ornoski**, 431 F.3d 1158 (9th Cir. 2005) and **Taylor v. Maddox**, 366 F.3d 992 (9th Cir. 2004), because the Eighth Circuit has authority addressing requests for evidentiary hearings in habeas proceedings under § 2254.

[14]  In support of his request for an evidentiary hearing in this Court, Petitioner seems to rely on the fact he did not receive an evidentiary hearing in the state appellate court.  (Pet'r Reply at 5 [Doc. 13 at 5].)  This Court is not aware of any authority allowing an evidentiary hearing before the Missouri Court of Appeals in a case such as Petitioner's case; and Petitioner has not directed this Court to any such authority.  Without more, this Court concludes the lack of an evidentiary hearing in Petitioner's state appellate court proceedings does not support or necessitate an evidentiary hearing before this Court in this habeas proceeding.

diligent effort." Moreover, Petitioner "has not argued that either exception in § 2254(e)(2)(A) and (B) applies, and it is apparent that neither does." **Id.**

Even if the evidentiary hearing is not statutorily barred, it is within this Court's discretion whether or not to grant such a hearing. **Crawford v. Norris**, 363 Fed. Appx. 428, at *2 (8th Cir. 2010) (unpublished per curiam opinion); **McGehee v. Norris**, 588 F.3d 1185, 1200 (8th Cir. 2009), cert. denied, 131 S. Ct. 1474 (2011); **Williams**, 576 F.3d at 860. The United States Supreme Court has noted that the basic rule that the district courts in habeas cases have "sound discretion" whether or not to grant an evidentiary hearing has not changed with the passage of the AEDPA. **Schriro v. Landrigan**, 550 U.S. 465, 473 (2007). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." **Id.** at 474. If the factual allegations Petitioner seeks to prove "would not entitle him to relief under the relevant standard, then an evidentiary hearing is not required." **Crawford**, 363 Fed. App. 428, at *2.

Here, there is clearly no need for an evidentiary hearing on the first through third grounds for relief. In his first ground, Petitioner challenges the sufficiency of the evidence to support the felony convictions and this Court may only consider the state court record in resolving that ground. See, e.g., **Garrison v. Burt**, 637 F.3d 849, 854 (8th Cir. 2011) (habeas relief may only be granted on a sufficiency of the evidence claim if the state appellate court's conclusion that the evidence satisfied the standard of Jackson v. Virginia, 443 U.S. 307, 319

(1979), is both incorrect and unreasonable)).  The second ground for relief is procedurally barred, see discussion infra, and therefore will not be considered on its merits, so no factual information is necessary to resolve that ground.  The third ground presents an issue of whether or not the trial court should have separated the felony counts from the misdemeanor count for trial, which is resolved by considering the types of offenses charged, as well as the evidence and instructions presented to the jury.  No further development of facts or evidence is necessary to resolve that ground.  The remaining five grounds for relief are claims that Petitioner's trial attorney and attorney on direct appeal provided ineffective assistance of counsel.  Petitioner had the opportunity to present evidence in support of those claims during the state court  post-conviction hearing and has not persuaded this Court that any other evidence would entitle him to relief under the standards applicable to ineffective assistance of counsel claims.  Accordingly, the Court will deny Petitioner's request for an evidentiary hearing.

Appointment of Counsel.  Petitioner summarily asks for appointed counsel.  (Pet. at 15; Pet'r Reply at 1.)  Respondent does not expressly address this request.

With an exception inapplicable here, see 28 U.S.C. § 2261, there is no constitutional or statutory right to the appointment of counsel in habeas corpus proceedings, see **Morris v. Dormire**, 217 F.3d 556, 558 (8th Cir. 2000); "instead, [the appointment of counsel] is committed to the discretion" of this Court, **McCall v. Benson**, 114 F.3d 754, 756 (8th Cir. 1997) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987)).  In considering whether

to appoint counsel, the factual and legal complexity of the case and the petitioner's ability to investigate and articulate his claims may be considered. **Morris**, 217 F.3d at 558-59. Moreover, where the issues involved can be properly resolved without an evidentiary hearing, the court does not abuse its discretion in denying a request for the appointment of counsel. See **Hoggard v. Purkett**, 29 F.3d 469, 472 (8th Cir. 1994).

The issues presented by Petitioner in his petition are neither factually nor legally complex, are articulately and appropriately advocated by Petitioner, and are capable of being resolved without an evidentiary hearing. Petitioner's request for the appointment of counsel will, therefore, be denied.

Merits - Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* "when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009), cert. denied, 130 S. Ct. 2412 (2010); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010). "A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts." **de la Garza**, 574 F.3d at

1001; <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001. "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").

Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point." **Losh**, 592 F.3d at 823 (citations omitted). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law precedential principles

to the contrary." **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011). Section 2254(d)

"does not require a state court to give reasons before its decision can be deemed to have been

'adjudicated on the merits.'" **Id.** at 785.

Additionally, in a federal habeas action pursued by a state prisoner, "a determination

of a factual issue made by a State court shall be presumed to be correct" unless rebutted by

the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed

by a federal habeas court to a state court's findings of fact includes deference to state court

credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and

to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance

of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the

presumption of correctness of findings of fact applies to the factual determinations made by

both the state's lower and appellate courts. **Smulls**, 535 F.3d at 864-65.

Ground one - Insufficient Evidence Supporting the Felony Burglary and Stealing

Charges. For his first ground, Petitioner argues the trial court violated his rights to due

process and a fair trial under the Fifth and Fourteenth Amendments by denying his motion for

judgment of acquittal on the felony charges in Counts I and II because the State failed to

prove that he was the individual who entered First Victim's home and stole the Vehicle and

other property. Specifically, Petitioner urges that there are "equally valid inferences" from

the evidence that Petitioner did not commit the felonies and, in his reply, Petitioner points to

alleged inconsistencies in the testimony, alleged failures in the investigation of the offenses,

and alleged voids in the evidence, for instance, a lack of a recorded statement by Petitioner and the absence of physical evidence tying Petitioner to the felony offenses. Essentially, Petitioner argues there is not sufficient evidence to support the verdicts on the felony offenses in Counts I and II. Respondent urges that the Missouri Court of Appeals correctly and reasonably applied **Jackson v. Virginia**, supra, in determining that there was sufficient evidence to support the convictions.

Due Process and the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." **United States v. Gaudin**, 515 U.S. 506, 510 (1995); **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting Gaudin, 515 U.S. at 510). The relevant question in analyzing a habeas claim that the evidence was insufficient to support a conviction is

> whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

**Jackson**, 443 U.S. at 319 (citation omitted). The scope of review of a state court's determination of whether evidence was sufficient is "extremely limited." **Skillicorn v. Luebbers**, 475 F.3d 965, 977 (8th Cir. 2007). Importantly, this limited review means that when "a reviewing court [is] 'faced with a record of historical facts that supports conflicting inferences [the reviewing court] must presume - even if it does not affirmatively appear in the

record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" **McDaniel v. Brown**, 130 S. Ct. 665, 673 (2010) (per curiam) (quoting <u>Jackson</u>, 443 U.S. at 326)); <u>accord</u> **Miller v. Leapley**, 34 F.3d 582, 585 (8th Cir. 1994) (a federal habeas court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and . . . must defer to that resolution" (citing <u>Jackson</u>, 443 U.S. at 326)).  A federal habeas court is not permitted to make its own determination of witness credibility, for that determination is for the state court trier of fact. **Robinson v. LaFleur**, 225 F.3d 950, 954 (8th Cir. 2000).  Petitioner is entitled to federal habeas relief on this ground only if this Court "find[s] the [state appellate court's] conclusion that the evidence satisfied the <u>Jackson</u> sufficiency of evidence standard [is] 'both incorrect <u>and</u> unreasonable.'" **Garrison**, 637 F.3d at 855 (quoting <u>Cole v. Roper</u>, 623 F.3d 1183, 1187 (8th Cir. 2010), <u>pet. for cert. filed</u>, No. 10-10504, 10A948 (U.S. May 14, 2011)).

To sustain the first degree burglary conviction under Mo. Rev. Stat. § 569.160, the State had to prove beyond a reasonable doubt that, in relevant part, Petitioner unlawfully entered a building while a non-participant in the crime was present and with the purpose of committing a crime inside the building. **State v. Williamson**, 836 S.W.2d 490, 495 (Mo. Ct. App. 1992).  To establish stealing over $500.00 under Mo. Rev. Stat. § 570.030 as charged here, the State had to prove beyond a reasonable doubt "that [Petitioner]: 1) appropriated the property of another 2) valued at $500.00 or more, but less than $25,000.00 3) with the

purpose to deprive him . . . thereof 4) without his . . . consent." **Brooks**, 158 S.W.3d at 848-49.

Construing the evidence in the light most favorable to the prosecution and deferring to the jury's resolution of any conflicts in favor of the prosecution, there was sufficient evidence to support each of the felony offenses' elements. There was testimony, from Robinson and Officer Meyer, that Petitioner was walking near First Victim's home about two hours before the felony offenses occurred; testimony from First Victim and his Wife that they returned home early the morning of December 31, 2002, and placed the keys to their Vehicle in the kitchen within a short time before the Vehicle's alarm sounded while the Vehicle was parked in their home's driveway; testimony from both First Victim and his Wife that they promptly looked out the window, noticed someone at the Vehicle, and ran outside as the Vehicle was being driven away from their home; testimony that First Victim called the police while Wife ran after the Vehicle; testimony that, within a short time, Officer Meyer, the responding police officer, noticed a vehicle fitting the description of the stolen Vehicle being driven by a person fitting the description of the man who had stolen the Vehicle, and Officer Meyer gave chase to the Vehicle; testimony that the Vehicle was found abandoned in a field not far from where First Victim and Wife lived, with other items inside the Vehicle that had been inside their home before the Vehicle was stolen; and evidence that Petitioner was arrested within a few hours wearing clothes like those described by Wife and walking in an area of the field where the Vehicle was abandoned. Moreover, both First Victim and Wife

testified that they had not given anyone permission to enter their home or take their Vehicle during the early morning hours of December 31, 2002; and there was no evidence that anyone else was in the Vehicle at the relevant time.

A reasonable jury could conclude that, while First Victim and his Wife were in their home during the early morning hours of December 31, 2002, Petitioner knowingly entered the home, without First Victim's or his Wife's permission, intending to steal and actually depriving First Victim and his Wife of their Vehicle, as well as other items of their personal property, without their permission, and then drove and abandoned the Vehicle away from the home, leaving the Vehicle along with other personal property of First Victim and his Wife inside the Vehicle. That is sufficient to establish that Petitioner committed the charged offenses of first-degree burglary and stealing over $500 under Missouri law.

Petitioner's arguments to the contrary were appropriate for argument to the jury but are not convincing here. Petitioner relies on the absence of fingerprint and other physical evidence connecting him to the felony offenses, but, as the United States Court of Appeals for the Eighth Circuit has noted, "[w]hile physical or forensic evidence . . . is eminently useful when found, its absence does not necessarily mandate acquittal." **Sera v. Norris**, 400 F.3d 538, 544 (8th Cir. 2005) (quoting United States v. Lam, 338 F.3d 868, 871 (8th Cir. 2003)); accord **Hill v. Norris**, 96 F.3d 1085, 1088 (8th Cir. 1996) ("[f]orensic evidence such as . . . fingerprints . . . [is] eminently useful when found, but [its] absence does not necessarily mandate acquittal").

To the extent Petitioner urges circumstantial evidence is insufficient to support the convictions because it does not "exclude other factual scenarios consistent with his innocence," such an argument lacks merit. **Hill**, 96 F.3d at 1088 (relying on <u>Jackson</u>, 443 U.S. at 325, 326)). Importantly, in Missouri circumstantial evidence is given the same weight as direct evidence, **Brooks**, 158 S.W.3d at 848, and circumstantial evidence can be sufficient to sustain a conviction for felony burglary and stealing offenses, <u>see</u> **id.** at 849 (evidence that the defendant was found near a truck used in a burglary and that property valued at more than $500 that had been taken at night during a break-in was found in the truck was sufficient to support each element of the crime of stealing over $500.00); **State v. Neal**, 849 S.W.2d 250 (Mo. Ct. App. 1993) (evidence that the defendant was found along a highway within miles of an abandoned getaway car and was identified by a witness as a person who broke into a building several hours before the defendant was found, among other evidence, was sufficient to support the defendant's burglary conviction even though the identification witness indicated he was not sure that the defendant was involved). The state appellate court properly decided that the evidence was sufficient to support the felony convictions.

Petitioner also supports his position on his first ground for relief by pointing to what he considers to be inconsistencies in the testimony and evidence presented at trial. This habeas court must, however, presume the jury "'resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" **McDaniel**, 130 S. Ct. at 673 (quoting <u>Jackson</u>, 443 U.S. at 326)); <u>accord</u> **Miller**, 34 F.3d at 585 (a federal habeas court "must

presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution" (citing <u>Jackson</u>, 443 U.S. at 326)).

While not expressly mentioning **<u>Jackson</u>**, the Missouri Court of Appeals clearly applied the **<u>Jackson</u>** standard in deciding that there was sufficient evidence to support Petitioner's felony convictions.  (Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. R. 30.25(b), Resp't Ex. H, at 2-11.)  The record supports the state appellate court's determination.  The state court decision is not contrary to or an unreasonable application of **<u>Jackson</u>**; and constituted a reasonable determination of the facts based on the evidence presented.

Ground one is without merit.

<u>Ground Two - Prosecutor's Questioning as Comments on Petitioner's Failure to Testify.</u>  Petitioner contends the trial court violated his rights to due process and a fair trial, as well as his privilege against self-incrimination, by denying his motion for mistrial due to repeated questions by the prosecutor which, Petitioner argues, commented on Petitioner's failure to testify and shifted the burden of proof to Petitioner by suggesting that Petitioner needed to explain where he was at the time of the offenses.  In particular, Petitioner argues the prosecutor's two objected-to questions to Detective Juengst asking whether Petitioner ever stated where he was during the early morning hours of December 31, 2002, that was corroborated by other evidence, constituted improper indirect references to his failure to testify and improperly shifted the burden of proof to Petitioner in that he was not under an

obligation to explain his whereabouts at the time of the offenses. In this habeas proceeding, Petitioner adds an argument suggesting the prosecutor's challenged questions interfered with Petitioner's right to remain silent after his arrest. (See, e.g., Pet. at 6-4 [Doc. 1 at 19], Pet'r Reply at 19, 23 [Doc. 13 at 19, 23].) Respondent urges that the Missouri Court of Appeals reasonably concluded there was no error because the prosecution may properly introduce evidence of what a defendant did or did not say after waiving his rights under Miranda, citing **United States v. Harris**, 956 F.2d 177, 181 (8th Cir. 1992) and **United States v. Collins**, 652 F.2d 735, 740 (8th Cir.1981). Respondent has not challenged this ground for relief as being procedurally defaulted.

This Court finds this ground for relief is procedurally barred, and will not address its merits, even though Respondent has not presented a procedural bar argument in response to this ground for relief. See, e.g., **Day v. McDonough**, 547 U.S. 198, 205-10 (2006) (holding, in a discussion of the statute of limitations, that habeas courts "are permitted, but not obliged" to raise threshold barriers such as procedural default) ; **Bell v. Norris**, 586 F.3d 624, 633-634 (8th Cir. 2009) ("it is appropriate to recognize a procedural bar in habeas cases whether or not raised by the state"), cert. denied, 130 S.Ct. 1295 (2010).

As the Missouri Court of Appeals noted, Petitioner's argument on direct appeal, characterizing the prosecutor's questions as comments on Petitioner's failure to testify resulting in a shift of the burden of proof, was different from his objection to the prosecutor's questions during trial, that the questions improperly suggested Petitioner had an affirmative

duty to explain his whereabouts during the time of the crimes.[15]  (See also Pet'r Mtn. New

Trial at 2, Legal File, Resp't Ex. D, at 41.)    The Missouri Court of Appeals only addressed

on the basis of plain error review Petitioner's argument that the prosecutor's challenged

questions commented on Petitioner's failure to testify and shifted the burden of proof;

rejected Petitioner's characterizations of the prosecutor's challenged questions; and concluded

the prosecutor's challenged questions were proper because the State may adduce evidence of

what Petitioner did or did not say after his waiver of his right to remain silent.  (Mem.

Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 12.)

A state prisoner must fairly present each of his claims in each appropriate state court

before seeking federal habeas review of the claim.  **Baldwin v. Reese**, 541 U.S. 27, 29

(2004).  Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas

court may not reach the merits of claims procedurally defaulted due to a petitioner's failure

to follow applicable state rules in raising the claims in state court.  **Sawyer v. Whitley**, 505

U.S. 333,  338 (1992).  See, e.g., **Owsley v. Bowersox**, 234 F.3d 1055, 1058-59 (8th Cir.

2000) (holding that federal habeas review of a habeas claim based on trial court error was

precluded by the Missouri Supreme Court's ruling that defendant had failed to preserve an

issue of constitutional trial court error where his attorney did not make specific objections at

trial and  the issue was not raised in a motion for new trial).

---

[15]  Petitioner's additional argument that the prosecutor's two challenged questions also violated his right to remain silent is also different from the objections he presented to the trial court and the argument he presented to the appellate court.

Missouri Supreme Court Rule 29.11(d) requires that, with three exceptions not applicable here,[16] allegations of error in a jury-tried criminal case be included in a motion for new trial to be preserved for appellate review. Thus, this Rule precludes appellate review of allegations of trial court error if that error is not raised in a motion for new trial. See, e.g., **State v. Pennington**, 24 S.W.3d 185, 188 (Mo. Ct. App. 2000) (trial court error in allowing the prosecutor to question a witness about an uncharged crime by defendant was not raised in motion for new trial and not preserved for appellate review); **State v. Thurman**, 887 S.W.2d 403, 409 (Mo. Ct. App. 1994) (trial court error in admitting evidence of a subsequent criminal act was not preserved for appellate review because it was not included in defendant's motion for new trial). A review of the record shows that Petitioner did not properly pursue the arguments he now presents in ground two, a contention of trial court error, either during trial or in his motion for new trial, and so the Missouri Court of Appeals reviewed Petitioner's challenge to the prosecutor's questions on direct appeal only for plain error.

"When a state court reviews a petitioner's claim under a plain-error standard, in federal habeas proceedings [the court] either review[s] the claim for plain error or view[s] the claim as procedurally barred and decline[s] to consider it at all absent a showing of cause and prejudice." **Roll v. Bowersox**, 177 F.3d 697, 700 (8th Cir. 1999). In **Toney v. Gammon**, 79 F.3d 693 (8th Cir. 1996), the Eighth Circuit found that a federal habeas claim that had

---

[16] The three exceptions are jurisdiction, whether the indictment or information states an offense, and the sufficiency of the evidence. Mo. S. Ct. R. 29.11(d)(1)-(3).

been reviewed by the state appellate court only for plain error was "procedurally barred as neither cause nor prejudice ha[d] been demonstrated." **Id.** at 699. Other Eighth Circuit cases hold that, when a state court conducts plain error review, a federal habeas court may also review the issue for "manifest injustice." See, e.g., **Thomas v. Bowersox**, 208 F.3d 699, 701 (8th Cir. 2000); **Mack v. Caspari**, 92 F.3d 637, 641 (8th Cir. 1996). These alternative analyses are available because the conflict in the case law allows a court to "choose which line of cases to follow." **Hornbuckle v. Groose**, 106 F.3d 253, 257 (8th Cir. 1997); see also **Burns v. Gammon**, 173 F.3d 1089, 1095 (8th Cir. 1999) (noting that under such circumstances a court "is free to select what it believes to be the better rule"). In **Sweet v. Delo**, 125 F.3d 1144 (8th Cir. 1997), the Eighth Circuit had before it two habeas claims subjected to plain error review in state court, and chose to consider one of those claims procedurally barred while considering the other claim under plain error analysis. **Id.** at 1152.

Here, the Court chooses to follow **Toney**, and concludes that the state appellate court's plain error review of the argument(s) now set forth as ground two precludes consideration of the merits of that ground absent a showing of cause and prejudice or actual innocence.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn**, 475 F.3d at 976-77. "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to

the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not shown any cause for his failure properly to present to the trial court either of his two arguments supporting his second ground for relief. Because no cause has been established for Petitioner's procedural defaults, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

This defaulted ground for habeas relief may be reached, even in the absence of a showing of cause and prejudice, if Petitioner establishes that a failure to consider the merits will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to

reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, the arguments presented as ground two in Petitioner's habeas petition, that the prosecutor's two challenged questions directed to Detective Juengst improperly impinged on Petitioner's right to remain silent and right not to testify are procedurally barred and will not be considered on the merits.

Ground two is procedurally barred.

Ground Three - Severance of the Misdemeanor Offense from the Felony Offenses.

For his third ground, Petitioner urges the trial court violated his rights to due process and a fair trial under the Fifth and Fourteenth Amendments by denying his motion to sever the felony charges from the misdemeanor charge, because those offenses occurred at different times and different locations, involved different victims, and were allegedly committed through different "modus operandi." Petitioner contends the evidence of the misdemeanor stealing count helped convict him of the felony burglary and stealing counts, and the jury could not distinguish the evidence linking Petitioner to the misdemeanor count from the evidence linking Petitioner to the felony counts. Respondent points out that the United States Supreme Court has not yet addressed whether a criminal defendant has a constitutional right to severance of charges in a state criminal trial and, if so, the proper standard of review in a

habeas proceeding;[17] and, for a petitioner to obtain habeas relief on such a ground in the

Eighth Circuit, the petitioner must show that "'the failure to grant severance rendered the trial

'fundamentally unfair,'" **Wharton-El v. Nix**, 38 F.3d 372, 374 (8th Cir. 1994) (quoting

Hollins v. Department of Corrections, 969 F.2d 606, 608 (8th Cir. 1992)). Respondent

contends that Petitioner has failed to show any fundamental unfairness in the trial which

would entitle him to relief on this ground.

After concluding the offenses were properly joined because they were similar in

character (Resp't Ex. H at 13-15), the Missouri Court of Appeals determined the trial court

did not abuse its discretion in denying severance of the misdemeanor charge from the felony

charges because the offenses were not numerous, the offenses were not "overly complex so

that the jury would confuse the evidence," "the evidence [and] the facts of each incident"

---

[17] The Supreme Court has noted, however, that improper joinder of defendants arises to a constitutional violation if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. **United States v. Lane**, 474 U.S. 438, 446 n.8 (1986).

While Petitioner cites to United States Supreme Court cases in support of this ground for relief, those cases do not address the constitutionality of joinder or the denial of severance of state offenses for trial. **Bousley v. United States**, 523 U.S. 614 (1998) (addressing a procedurally defaulted challenge to a guilty plea, and concluding the petitioner may be entitled to a hearing on the merits if he makes the necessary showing); **Bordenkircher v. Hayes**, 434 U.S. 357 (1978) (addressing whether the due process clause of the Fourteenth Amendment is violated when the prosecutor carries out a threat made during plea negotiations to re-indict the defendant on more serious charges if the defendant did not plead guilty to the original charges); **Schaffer v. United States**, 362 U.S. 511 (1960) (addressing under Rules 8(b) and 14 of the Federal Rules of Criminal Procedure the joinder and severance of defendants after dismissal of a conspiracy count).

Petitioner also cites to case law discussing Federal Rule of Criminal Procedure 14 to support this ground for relief, but such case law is inapposite in this federal habeas case arising out of a state criminal trial.

were not complex, "each offense was clearly set out in a separate instruction, and the jury was specifically instructed that each count must be considered separately," and nothing in the record indicated the jury was unable either "to distinguish between the evidence for each offense or . . . to apply the law to each offense." (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 15-17.)

Importantly, "the decision to join offenses in a single trial is a matter within the discretion of the trial judge under both Missouri and federal law. That decision may not normally be disturbed on review." **Robinson v. Wyrick**, 735 F.2d 1091, 1094 (8th Cir. 1984) (citations omitted). While there is the arguable possibility of prejudice through joinder of offenses in that the jury may use evidence of all the crimes to find guilt on one offense when such guilt may not be found if that offense was tried separately, there is no such prejudicial effect from joinder when the evidence of each crime is simple and distinct, so that under a proper charge the jury can keep the evidence separate during the deliberations. **Closs v. Leapley**, 18 F.3d 574, 577-78 (8th Cir. 1994).

In this habeas proceeding, the state appellate court's finding that the offenses were of a similar character so as to make their joinder proper is entitled to the presumption of correctness. See **Wharton-El**, 38 F.3d at 375 (the state appellate court's conclusion that the two offenses were part of a common scheme or plan was entitled to the presumption of correctness in the habeas proceeding). Petitioner has not rebutted these findings by clear and convincing evidence. The evidence and circumstances Petitioner now refers to in support of

this ground for relief are the same evidence and circumstances he presented in the direct appeal, and were considered by the state appellate court. Without more, this Court is not at liberty to ignore the state appellate court's findings that the three offenses were properly joined.

Moreover, there was no prejudice to Petitioner from the joinder and denial of severance of the three charged offenses for trial. The trial lasted less than three days, and the evidence presented was straightforward, simple, distinct, and not confusing. The trial court gave a separate verdict directing instruction for each offense and instructed the jury to determine Petitioner's guilt on each count separately. (Instrs. No. 5-8, Legal File, Resp't Ex. D, at 30.) As the Eighth Circuit stated in **Wharton-El**, "[t]aken together, the finding of [the offenses' similar character] and the cautionary instruction indicate that the failure to grant severance [of the offenses] did not render [Petitioner]'s trial fundamentally unfair." **Wharton-El**, 38 F.3d at 375. Petitioner has not carried his burden to establish that the joinder of the three offenses in a single trial was fundamentally unfair. The decision of the state appellate court is not contrary to or an unreasonable application of clearly established federal law, and is based on a reasonable determination of the facts based on the record.

Ground three is without merit.

Grounds Four through Eight -- Ineffective Assistance of Counsel - Standard of Review. The following principles apply to each of the remaining five grounds for relief which contend Petitioner's attorneys provided ineffective assistance of counsel.

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 377 (1986)). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second, that counsel's errors prejudiced the defense." **Id.** (citations omitted) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)); **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing <u>Strickland</u>, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting <u>Nolan v. Armontrout</u>, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting <u>Middleton v. Roper</u>, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir.) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)), cert. denied, 130 S.Ct. 3369 (2010). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

Notably, in its post-conviction appeal opinion, the Missouri Court of Appeals cited to **Strickland** as setting forth the standard applicable to an ineffective assistance of counsel claim. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at 3.)

Ground Four – Ineffective Assistance of Counsel on Direct Appeal. In his fourth ground for relief, Petitioner argues his counsel on direct appeal provided ineffective assistance of counsel and violated his rights to due process, to access to the courts, and to

meaningful appellate review, by conceding in the appellate brief that Petitioner had committed the misdemeanor stealing offense when Petitioner had not consented to that concession.[18]  Respondent counters that the Missouri Court of Appeals' decision that Petitioner was not prejudiced by the concession because the appellate court would have decided that there was sufficient evidence to support Petitioner's felony convictions without the alleged concession was a reasonable interpretation of <u>Strickland</u>; and, regardless of the concession there was ample evidence of Petitioner's guilt of the misdemeanor stealing, in that Second Victim's cell phone was found on Petitioner when he was arrested (Resp't Ex. A at 455-56, 467-68, 480-81) and ample evidence of Petitioner's guilt of the felony charges (Resp't Ex. H at 4-11).

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal.  <u>See</u> **Evitts v. Lucey**, 469 U.S. 387, 396-97 (1985); **Douglas v. California**, 372 U.S. 353, 357-58 (1963).  The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in **Strickland**, <u>supra</u>. **Smith v. Robbins**, 528 U.S. 259, 285 (2000); **Boliek v. Bowersox**, 96 F.3d 1070, 1073 (8th Cir. 1996).  Petitioner must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result

---

[18]  In his reply, Petitioner also presents other challenges to statements made by his counsel on direct appeal in the brief (Reply at 31-32 [Doc. 13]), but those matters were not pursued in the post-conviction appeal and are procedurally barred from further consideration.  <u>See</u> earlier discussion of procedural bar, which applies to this aspect of the fourth ground for relief.

would have been different absent this deficient performance.  See **Strickland**, 466 U.S. at 687; **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).

As to the performance element, appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers.  See **Jones v. Barnes**, 463 U.S. 745, 751-52 (1983); **Gee**, 110 F.3d at 1352; **Pollard v. Delo**, 28 F.3d 887, 889 (8th Cir. 1994); see also **Parker v. Bowersox**, 94 F.3d 458, 462 (8th Cir. 1996) ("To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal").  For the prejudice element of his ineffective assistance of appellate counsel claim, Petitioner "must show a reasonable probability that, but for his counsel's unreasonable [conduct], he would have prevailed on his appeal." **Smith**, 528 U.S. at 285.  As with an ineffective assistance of trial counsel claim, the Court may resolve an ineffective assistance of appellate counsel claim by finding either no prejudice or no deficient performance and, if either element is not satisfied, the Court does not need to address the other element.  **Id.** at 286 n. 14.

As the Missouri Court of Appeals found, this Court finds that the test of ineffectiveness of appellate counsel is the same when the basis of the ineffectiveness is the inclusion of a matter in a brief as when the basis of the ineffectiveness is an omission of a matter from a brief.  For the prejudice element of his ineffective assistance of appellate counsel claim, therefore, Petitioner "must show a reasonable probability that, but for his

counsel's unreasonable [concession], he would have prevailed on his appeal." **Smith**, 528 U.S. at 285.

Here, the flaw in this ground for relief is that the state appellate court that reviewed this challenge in Petitioner's post-conviction proceeding would have considered the direct appeal without the concession if the sufficiency of the evidence argument had been raised on direct appeal without the concession. Notably, that state appellate court was

> not persuaded that the deletion of the challenged statements from the appellate brief filed on [Petitioner]'s behalf in his direct appeal would have changed the outcome of the direct appeal or necessitated a finding by the appellate court that there was insufficient evidence to support the felony convictions. . . . [The state appellate court's] comprehensive discussion of the record supporting the felony convictions more than supports the appellate court's determination that there was sufficient evidence supporting those convictions, regardless of any brief reference by the Court to a "concession" regarding the misdemeanor conviction, regardless of any statements made in [Petitioner]'s brief on direct appeal, and regardless of whether or not [Petitioner] agreed with any statements made by his counsel in his brief on direct appeal.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at 7.) Therefore, Petitioner's position that the appellate court would not have found sufficient evidence supporting the verdicts if the concession been omitted from the brief on direct appeal is refuted by the very court that would have decided the question on direct appeal. Because Petitioner would not have prevailed on direct appeal if the concession had been omitted from his brief, no prejudice results from the inclusion of the concession in Petitioner's direct appeal brief; and this Court need not address the performance prong of this ineffective assistance of counsel claim.

The state court's determination, that Petitioner's appellate attorney did not provide ineffective assistance of counsel in conceding in the direct appeal brief that Petitioner was guilty of the misdemeanor offense, was not contrary to or an unreasonable application of clearly established federal law.  Nor was that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground four lacks merit.

Ground Five - Ineffective Assistance of Trial Attorney -- Failure to Investigate and Impeach Regarding Promises of Leniency.  For his fifth ground, Petitioner contends his trial attorney's failure to investigate whether three jurisdictions promised Robinson a lenient disposition of her charge(s) in exchange for her testimony against Petitioner and his failure to impeach Robinson about any such promise violated his rights to the effective assistance of counsel, due process, effective cross-examination, a fair trial, and meaningful appellate review.  Respondent counters that the state appellate court's denial of this claim due to a lack of evidence that any offer of leniency existed is presumed correct and the claim is meritless.

The Missouri Court of Appeals noted "the only evidence of the possibility that Robinson received lenient treatment was [Petitioner]'s testimony that nothing now appeared on Robinson's criminal record although she was arrested on warrants at the time of [Petitioner]'s arrest."  (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at 9.)  Additionally, the appellate court stated that the motion court had denied the claim as without merit because there was no proof of a promise of leniency made to

Robinson and the claim was based on "mere speculation." (Id.) The Missouri Court of Appeals decided that Petitioner was not entitled to relief on this claim upon concluding there was "no evidence of a State's offer of a lenient sentence in exchange for Robinson's testimony at [Petitioner]'s trial" and therefore nothing established that "Robinson's testimony would have been subject to additional substantial impeachment beneficial to [Petitioner] due to leniency or favorable treatment on Robinson's warrant." (Id. at 9-10.)

A trial attorney "is required to make a reasonable investigation in preparing [a defendant's] defense, including reasonably deciding when to cut off further investigation." **Winfield v. Roper**, 460 F.3d 1026, 1034 (8th Cir. 2006) (citing Strickland, 466 U.S. at 691). "When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a significant degree of deference given to counsel and his or her professional judgment." **Griffin v. Delo**, 33 F.3d 895, 901 (8th Cir. 1994).

Importantly, when a petitioner fails to establish the existence of a promise of leniency, a claim that an attorney was ineffective for failing to cross-examine a witness about such leniency fails. Cf. **Anderson v. Bowersox**, 262 F.3d 839, 841 (8th Cir. 2001) (absent proof of a deal between a witness and a prosecutor, an allegation of such a deal is insufficient to support an ineffective assistance of counsel claim). "Whether the State made deals with [a witness] is a factual question entitled to the presumption of correctness unless the petitioner can clearly and convincingly show otherwise." **Dye v. Stender**, 208 F.3d 662, 665 (8th Cir.

2000) (addressing an alleged violation of <u>Brady</u> in a failure by the State to disclose the existence of deals with two witnesses).

Petitioner has not rebutted the state court's determination that there was no deal providing leniency to Robinson in exchange for her testimony at Petitioner's trial.[19] Due to the absence of proof of a leniency arrangement favoring Robinson in exchange for her testimony, there is no prejudice resulting from any failure of Petitioner's attorney either to investigate the existence of any such an arrangement or to cross-examine Robinson about any such arrangement.

The state court's determination, that Petitioner's trial attorney did not provide ineffective assistance of counsel by failing to investigate and question Robinson about any deal or promise of leniency on her pending charge(s) in exchange for her testimony at Petitioner's trial, was not contrary to or an unreasonable application of clearly established federal law. Nor was that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground five lacks merit.

<u>Ground Six – Ineffective Assistance of Trial Counsel - Failure to Request Hearing on Motion to Suppress and to Present Petitioner as a Witness at that Hearing.</u> In his sixth ground, Petitioner urges this trial attorney was ineffective in failing to request a hearing on

---

[19]   Even if it is proper for this Court to consider Robinson's clear record as reported in Petitioner's Ex. A40 attached to his reply, that document indicates it was printed on May 26, 2006, or at least two years after Petitioner's trial. Nothing of record makes it clear that Robinson's clear record in 2006 resulted from her testimony at Petitioner's September 2003 trial.

the motion to suppress and failing to call Petitioner at such a hearing so that Petitioner could testify that he never made any statements, that he was not given his <u>Miranda</u> warnings until three hours into the interrogation, and that there was no recording, in writing or otherwise, of his alleged statement. Respondent argues that the denial of this claim was reasonable due to the appellate court's finding that decisions to request a hearing and present witnesses at a hearing are discretionary decisions made by the attorney (Resp't Ex. P at 11) and due to the fact the post-conviction motion judge, who was also the trial judge, found she would not have granted the motion to suppress even if Petitioner had testified at such a hearing, because Petitioner was not credible (Resp't Ex. K at 116).

In affirming the denial of post-conviction relief on this ground, the Missouri Court of Appeals noted that, at the post-conviction hearing, Petitioner's trial counsel "explained he did not request a suppression hearing because he did not think there were any admissions of guilt in any statement made by [Petitioner] and [Petitioner] had executed a waiver of rights form"; and concluded that both the determination about how vigorously to pursue motions to suppress, and whether to present Petitioner as a witness at a suppression hearing, are strategy matters within counsel's discretion. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at 10-11.)

Under the circumstances, the state court's conclusion that Petitioner is not entitled to relief on this ineffective assistance of counsel claim is not contrary to or an unreasonable

application of **Strickland**.[20]  "Decisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" **Hanes v. Dormire**, 240 F.3d 694, 698 (8th Cir. 2001) (discussing a trial attorney's alleged ineffectiveness for failing to consult or call potential trial witnesses) (quoting Williams v. Armontrout, 912 F.2d 924, 934 (8th Cir. 1990) (en banc)); cf. **United States v. Washington**, 198 F.3d 721, 723-24 (8th Cir. 1999) (strategic decisions left to counsel include all trial decisions other than the decision to plead guilty, waive a jury trial, testify on one's own behalf, and take an appeal).  Moreover, in light of the highly deferential standard for a habeas corpus court's review of an attorney's performance and the strong presumption that an attorney's conduct falls within the wide range of reasonable professional assistance, a state court's determination that a trial attorney's decision not to request a hearing to challenge evidence is a matter of trial strategy is not contrary to or an unreasonable application of **Strickland**.  **Abdi v. Hatch**, 450 F.3d 334, 337 (8th Cir. 2006) (no ineffectiveness in attorney's failure to request hearing to challenge the admissibility of DNA reports).

Ground six lacks merit.[21]

---

[20]  Moreover, that state court decision was not based on an unreasonable determination of the facts in light of the evidence.

[21]  This conclusion is also supported by the fact the trial judge who would have decided whether or not to suppress Petitioner's statements also presided over the post-conviction motion proceedings and decided in those proceedings both that Petitioner's testimony was not credible and that Petitioner's statements would not have been suppressed even if he had testified at a suppression hearing.  This determination establishes Petitioner was not prejudiced by his trial attorney's failure to seek a suppression hearing and present Petitioner as a witness at that hearing.

Ground Seven – Ineffective Assistance of Counsel – Failure to Prepare Petitioner and to Call Petitioner to Testify at Trial. For his seventh ground for relief, Petitioner argues that his trial attorney provided ineffective assistance of trial and violated his rights to due process and a fair trial, by failing to prepare and call Petitioner to testify at trial. Respondent counters that the Missouri Court of Appeals' decision affirming the denial of this claim, because trial counsel's advice that Petitioner should not testify was reasonable in light of Petitioner's prior convictions and the circumstantial nature of the States's case, was a reasonable application of **Strickland**.

In the post-conviction appeal, the state appellate court relied "on the more credible testimony of counsel to resolve this point," and was persuaded that counsel's advice was reasonable in view of the facts that Petitioner "had several prior convictions for offenses similar to those charged here and the evidence against [Petitioner] was circumstantial." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at 12.) Additionally, the appellate court pointed out that Petitioner "had the opportunity, during an overnight break in the trial proceedings, to consult with his trial attorney and consider whether or not to testify during trial, and clearly advised the trial court [the next morning that] it was his decision not to testify. Under the circumstances, [Petitioner]'s trial attorney's advice may be considered sound trial strategy and not ineffective assistance of counsel." (Id. at 13.)

An accused has a federal constitutional right to testify on his own behalf at his criminal trial. **Rock v. Arkansas**, 483 U.S. 44, 51-52 (1987). "Because the right to testify is a

fundamental constitutional guarantee, only the defendant is empowered to waive the right," and that waiver must be made voluntarily and knowingly. **United States v. Bernloehr**, 833 F.2d 749, 751 (8th Cir. 1987); accord **United States v. Ward**, 598 F.3d 1054, 1059 (8th Cir. 2010). Where a state court's findings of the attorney's advice regarding the right to testify and of the acceptance of counsel's advice are clearly supported by the record, a federal habeas court should "not second guess them." **Frey v. Schuetzle**, 151 F.3d 893, 898 (8th Cir. 1998). Eighth Circuit case law supports a conclusion that an attorney's advice that a defendant should not testify due to prior convictions is not ineffective assistance of counsel. **Johnson v. Lockhart**, 921 F.2d 796, 800 (8th Cir. 1990) (due to an attorney's discretion to advise a client whether he should testify on his behalf, attorney's advice not to testify due, in part, to prior convictions may "at worst be called bad trial strategy, not constitutionally deficient legal performance"); **Drake v. Wyrick**, 640 F.2d 912, 915 (8th Cir. 1981) (trial attorney's advice that the defendant should not testify due, in part, to prior convictions was a matter of trial strategy and not a ground for finding ineffective assistance).

Here, the state court's findings on Petitioner's trial attorney's advice regarding Petitioner's right to testify and Petitioner's acceptance of that advice are clearly supported by the record. Based on the record, Petitioner's waiver of the right to testify was knowing and voluntary, and counsel did not provide ineffective assistance in advising Petitioner not to take the stand. The state appellate court's decision was not an incorrect or unreasonable

application of clearly established federal law. Nor was that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground seven lacks merit.

Ground Eight – Ineffective Assistance of Trial Counsel – Failure to Investigate and Call an Alibi Witness at Trial. For his eighth ground, Petitioner argues that his trial attorney provided ineffective assistance and violated his rights to due process, to present a defense, and to a fair trial, by failing to investigate and call his sister, Coretta Jackson, (Sister) who could testify that Petitioner came to her house at about 1:00 a.m. on December 31, 2002, and left around 6:00 a.m. that day. (Id. at 6-16.) In support of this ground for relief, Petitioner states that, based on his testimony, Sister's testimony, and his trial attorney's testimony, the record shows his trial attorney did not speak to Sister prior to trial despite the contact information provided by Petitioner, that his trial attorney filed a late motion for alibi, and that Sister was never called to testify at Petitioner's trial although she was ready and willing to testify. Petitioner urges a reasonably competent attorney would have spoken to this potential witness before deciding the witness would not aid the defense. Respondent counters that Petitioner, rather than his attorney, was responsible for the late disclosure of this witness and her exclusion from trial, and the state appellate court's application of **Strickland** to affirm the motion court's denial of this ground for relief was reasonable.

Petitioner's counsel first, and unsuccessfully, attempted to endorse Sister after the State rested its case because Petitioner first informed him of that witness toward the end of

trial and before that time Petitioner had told him that Petitioner had been at one or two businesses in the St. Charles, Missouri, area during the relevant time on December 31, 2002. (See Trial Tr., Resp't Ex. A, at 601-10; Mtn Hr'g Tr., Resp't Ex. J, at 54-57.)  The post-conviction motion court found that counsel's testimony was more credible than Petitioner's, that Petitioner failed to provide counsel with sufficient information to prepare an alibi defense with Sister's testimony, and that the outcome of trial would not have been different even if Sister's testimony had been presented "due to all the evidence that had been presented to the jury." (Mtn. Ct. J., Resp't Ex. K, at 117-18.)  In affirming the motion court's decision, the Missouri Court of Appeals, deferred to the lower court's credibility determination, noted "[c]ounsel cannot be faulted for alibi information known to and not disclosed by his client," and observed that it was "not clear what more counsel could have done" because counsel had tried "unsuccessfully to present the testimony at trial once it was disclosed to him." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp't Ex. P, at 14-15.)

"Counsel has a duty to make a reasonable investigation based on the information provided by a defendant, particularly when an alibi is involved." **Hadley v. Groose**, 97 F.3d 1131, 1135 (8th Cir. 1996); see also **Strickland**, 466 U.S. at 691  ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions").  "Only rarely, under circumstances unlike those in the present case, has [the Eighth Circuit] found counsel's failure to interview potential alibi witnesses sufficient to warrant a finding of ineffective assistance of counsel." **Cox v. Wyrick**, 642 F.2d

222, 226 (8th Cir. 1981). This Court evaluates "counsel's decision not to interview or call a particular witness from the perspective of counsel at the time the decision was made." **Parker**, 94 F.3d at 461. If the record fails to indicate that counsel had information about the identity of an alibi witness, there is no ineffective assistance of counsel. **Cox**, 642 F.2d at 226; see **Schlup v. Delo**, 941 F.2d 631, 639 (8th Cir. 1991) (trial attorney was not ineffective in failing to interview or call additional alibi witnesses, in part, because the petitioner "failed to inform counsel of the possibilities of these witnesses with regard to an alibi defense"); see also **Battle v. Delo**, 19 F.3d 1547, 1555 (8th Cir. 1994) (trial attorney not ineffective for failing to present a witness who was not identified by the petitioner before trial).

Here, the state courts found no credible evidence that Petitioner gave counsel information about Sister's alibi testimony until near the close of trial. This Court may not make its own credibility determinations; and nothing of record rebuts the state court findings supporting that conclusion. Therefore, "[t]here is no evidence that [Petitioner] gave counsel information [prior to trial] which would have led him reasonably to conclude that further investigation was necessary," and Petitioner's trial attorney did not provide ineffective assistance with respect to his failure to investigate or present at trial Sister's alibi testimony. **Cox**, 642 F.2d at 226.

The state appellate court's decision affirming the denial of this ground for relief is not contrary to or an unreasonable application of clearly established federal law. Nor is that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground eight is without merit.

## Conclusion

After careful consideration, the undersigned recommends the denial of Petitioner's petition for federal habeas relief because the second ground for federal habeas relief is procedurally barred and each of Petitioner's other grounds for federal habeas relief lack merit. Accordingly,

**IT IS HEREBY ORDERED** that Jeff Norman is **SUBSTITUTED** for Troy Steele as the Respondent in this case.

**IT IS FURTHER ORDERED** that Petitioner's requests for an evidentiary hearing and the appointment of counsel are **DENIED**.

**IT IS FINALLY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Andrew Jackson be **DENIED** without further proceedings.

The parties are advised that they have **fourteen days** to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of June, 2011.